**LeSPORTSAC, INC., Plaintiff-Appellee,**

v.

**K MART CORPORATION,**
**Defendant-Appellant.**

**Nos. 524, 525, Dockets 84–7632, 84–7790.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 10, 1984.
Decided Jan. 24, 1985.

Steven H. Bazerman, New York City (Kuhn, Muller & Bazerman, Julius Rabinowitz, New York City, of counsel), for plaintiff-appellee.

Marvin A. Tenenbaum, Chicago, Ill. (Alexander, Unikel, Bloom, Zalewa & Tenenbaum, Ltd., Richard E. Alexander, James D. Zalewa, Chicago, Ill., Martin W. Schiffmiller, Kirschstein, Kirschstein, Ottinger & Israel, P.C., New York City, of counsel), for defendant-appellant.

Before FEINBERG, Chief Judge, KAUFMAN and ROSENN,* Circuit Judges.

FEINBERG, Chief Judge:

K mart Corporation appeals from two orders of the United States District Court for the Eastern District of New York, Joseph M. McLaughlin, J., granting motions of plaintiff LeSportsac, Inc., for a preliminary injunction. The orders enjoin K mart from marketing certain bags, which the court found to contain a combination of mark and dress confusingly similar to that used by plaintiff. For reasons stated below, we affirm.

## I.

LeSportsac commenced this action on June 22, 1984, alleging that K mart had violated various federal laws as well as New York State statutes and common law in selling certain bags under the trade name "di paris sac." On July 11, 1984, the district court, relying chiefly on the claim of unregistered trademark infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), granted LeSportsac's motion for a preliminary injunction after hearing testimony from four witnesses and receiving other evidence.[1] By order dated July 13, 1984, the court enjoined K mart from selling four specific bags (the "lightweight bags") and directed LeSportsac to post an injunction bond of $250,000.

In August, K mart moved to modify the July 13 order to permit K mart to sell its bags with a square hangtag, approximately three and one-half inches on each side, stating prominently:

---

* Honorable Max Rosenn, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

1. Because the district court's order was based on § 43(a) of the Lanham Act, we need not address the other grounds for relief claimed in LeSportsac's complaint.

di paris sac

## SOLD EXCLUSIVELY AT AND MADE EXCLUSIVELY FOR

### K mart

LeSportsac cross-moved to broaden the injunction to include a fifth K mart bag, described by the parties and the district court as the "heavyweight knapsack." In a Memorandum and Order dated September 18, 1984, the district court denied K mart's motion to modify the injunction, granted LeSportsac's motion to broaden the injunction to include the heavyweight knapsack and increased the injunction bond to $400,000.

LeSportsac has been selling a distinctive, highly successful line of lightweight luggage and bags since 1976. In that period, LeSportsac has sold approximately 5,000,-000 bags—for over $50,000,000—both in the United States and abroad. The bags, available in a variety of colors, are made of parachute nylon and trimmed in cotton carpet tape with matching cotton-webbing straps. The zippers used to open and close the bags are color coordinated with the bags themselves, and usually are pulled with hollow rectangular metal sliders. Many bags also have separate zippered compartments that employ the same hollow rectangular sliders.

The LeSportsac line also features the repetitive printing of the LeSportsac logo on the trim of each bag. The distinctive logo consists of a solidly colored circle, followed by the name "LeSportsac" in the same color as the bag, both enclosed within an elongated ellipse of the same color as the circle. The name, the circle and the ellipse are all set against an elliptical background that contrasts with the color of the bag.

K mart apparently purchased its allegedly infringing line of bags in the Far East in late 1983; the bags were first offered for sale early in 1984. The K mart bags are strikingly similar to those manufactured and sold by LeSportsac. Four of the five allegedly offending bags (the lightweight bags) are also made of parachute nylon and trimmed in cotton tape, have cotton handles in the same color as the trim and are equipped with color-coordinated zippers and hollow rectangular metal zipper pulls. K mart sells these bags under the name "di paris sac." The di paris sac logo is quite similar to that of LeSportsac in both design and color combinations. The name, which is in the same color as the bag, is followed by an Eiffel Tower design; both are enclosed within an elongated ellipse. The name, the Eiffel Tower design and the ellipse are all set against the elliptical background, which contrasts with the color of the bag. K mart apparently admits that these four bags were copied from LeSportsac bags.

The fifth bag—the heavyweight knapsack—is somewhat less similar to its LeSportsac counterpart than are the other four. It is made of heavier nylon and uses different webbing for its carrying straps. In addition, the "di paris sac" logo is slightly different from that on the other four K mart bags.

### II.

A party seeking a preliminary injunction in this circuit must establish both possible irreparable injury and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *See, e.g., Arthur Guinness & Sons, PLC v. Sterling Publishing Co.,* 732 F.2d 1095, 1099 (2d Cir. 1984); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 206–07 (2d Cir.1979). The standard of review on appeal to this court is whether issuance of the preliminary injunction, in light of the applicable legal standards, constituted an abuse of discretion. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975). The term "abuse of discretion" is capable of widely varying interpretations, ranging, as Judge Friendly has recently pointed out, "from ones that would require the appellate court to come close to finding that the

trial court had taken leave of its senses to others which differ from the definition of error by only the slightest nuance, with numerous variations between the extremes." *See* Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 763 (1982); *see also* Rosenberg, Judicial Discretion of the Trial Court, Viewed from Above, 22 Syracuse L.Rev. 635, 639 (1971). In the remainder of this opinion, we will indicate the type of scrutiny we are applying to the various aspects of the decision of the district court. *Cf. Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 315–16 (2d Cir.1982).

■ Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),[2] establishes a federal law of unfair competition by providing a statutory remedy to a party injured by a competitor's "false designation of origin" of its product, whether or not the aggrieved party has a federally registered trademark. *See, e.g., Ives Laboratories, Inc. v. Darby Drug Co.*, 601 F.2d 631, 641 (2d Cir.1979). The "trade dress" of a product, which "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, [or] graphics," *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983), may become an unregistered trademark eligible for protection under § 43(a) if it is nonfunctional and has acquired a secondary meaning in the marketplace by which it is identified with its producer or source. *See, e.g., Ives Laboratories, supra*, 601 F.2d at 642–43.

■ Most trade dress infringement actions involve the packaging or labeling of goods. *See* 1 J.T. McCarthy, Trademarks and Unfair Competition § 8:1 (2d ed. 1984). Recently, however, we have recognized

that the design of a product itself may function as its packaging, serving to distinguish it from other products, and hence be protectable trade dress under § 43(a). *See, e.g., Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir.1981) (distinctive color and symbols on toy car); *Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946 (2d Cir.1981) (distinctive paperback book covers). To maintain an action for trade dress infringement, having established an unregistered trademark in that dress, "a plaintiff must allege that a competitor's product design or packaging is likely to confuse consumers as to the product source—such a design or packaging falsely designates its origin." *20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81, 93 (2d Cir.1984).

### A. *Functionality*

"Functional symbols (those that are essential to a product's use as opposed to those which merely identify it) are not protected under § 43(a)." *Warner Bros., Inc. v. Gay Toys, Inc. (Warner II)*, 724 F.2d 327, 330 (2d Cir.1983). K mart claims that LeSportsac failed to establish that its design features are nonfunctional.

At the outset, we note that it is not clear either in this circuit or elsewhere whether a plaintiff has the burden of proving nonfunctionality in order to obtain § 43(a) relief or whether a defendant must prove functionality as a defense. *Compare Vibrant Sales, Inc. v. New Body Boutique, Inc.*, 652 F.2d 299, 303–04 (2d Cir.1981) (apparently suggesting, in dicta, that burden is on plaintiff), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982), *with Warner II, supra*, 724 F.2d at 330–32

---

2. Section 43(a), 15 U.S.C. § 1125(a), provides:
   Any person who shall affix, apply or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin ·or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

(discussing "functionality defense"), and *Ives Laboratories, supra,* 601 F.2d at 643 (affirming denial of preliminary injunction; "case for functionality ... depends on the evidence proffered by defendants ..."). *See also Clarke Checks, supra,* 711 F.2d at 982 n. 26 (declining to resolve question of where burden should be placed); *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.,* 626 F.2d 193, 195–96 (1st Cir.1980) (expressing doubt about where burden should be placed).

■ We believe that *Warner II* correctly characterized the question of functionality as a defense, and that the burden therefore falls on the defendant to prove functionality. *See also Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 863, 102 S.Ct. 2182, 2193, 72 L.Ed.2d 606 (1982) (White, J., concurring) ("functionality is a defense to a suit under § 43(a) of Lanham Act"). Requiring the plaintiff to prove nonfunctionality in order to prevail might "defeat[ ] the Lanham Act's purpose of enabling a purchaser to distinguish one product from another, see S.Rep. No. 1333 [79th Cong., 2d Sess. 4 (1946) ], because a plaintiff unable to prove that the features copied are nonfunctional will not prevail, no matter how compelling the evidence that purchasers are confused as to product source." Note, The Problem of Functional Features: Trade Dress Infringement Under Section 43(a) of the Lanham Act, 82 Colum.L.Rev. 77, 87 n. 78 (1982).

The Supreme Court, in dictum, recently defined a functional feature in "general terms" as one that "is essential to the use or purpose of the article or [that] affects the cost or quality of the article." *Inwood Laboratories, supra,* 456 U.S. at 850 n. 10, 102 S.Ct. at 2186 n. 10.· Judge Oakes elaborated on this definition in *Warner II:*

A design feature of a particular article is "essential" only if the feature is dictated by the functions to be performed; a feature that merely accommodates a useful function is not enough. *In re Morton-Norwich Products, Inc.,* 671 F.2d 1332, 1342 (Cust. & Pat.App.1982) (shape of plastic container for spray products not

essential to its purpose as a sprayer). And a design feature "affecting the cost or quality of an article" is one which permits the article to be manufactured at a lower cost, e.g., *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 122, 59 S.Ct. 109, 115, 83 L.Ed. 73 (1938) (pillow shape of shredded wheat biscuit functional as cost would be increased and quality lessened by other form), or one which constitutes an improvement in the operation of the goods, *e.g., Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.,* 626 F.2d 193, 195 (1st Cir.1980) (two-tier design of woodstove functional because improving the operation of the stove in three respects).

The functionality defense, then, was developed to protect advances in functional design from being monopolized. It is designed to encourage competition and the broadest dissemination of useful design features.

724 F.2d at 331 (footnote omitted).

■ K mart argues that certain of LeSportsac's design features, particularly the hollow rectangular zipper pull, the cotton carpet tape and use of the repeating logo, are plainly functional and hence unprotected. But by breaking LeSportsac's trade dress into its individual elements and then attacking certain of those elements as functional, K mart misconceives the scope of the appropriate inquiry. LeSportsac does not claim a trademark in all lightweight nylon bags using hollow zipper pulls or carpet tape trim. It claims as its mark the particular combination and arrangement of design elements that identify its bags and distinguish them from other bags. See *Dallas Cowboys Cheerleaders, supra,* 604 F.2d at 203. The district judge found that the design of the LeSportsac bag, when viewed in its entirety, is nonfunctional. That finding, on the record as it now stands, is not clearly erroneous. See *Vuitton et Fils S.A. v. J. Young Enterprises,* 644 F.2d 769, 775 (9th Cir.1981) ("The issue of functionality has been consistently treated as a question of fact.") (citing *Ives Laboratories, supra,* 601 F.2d at 643). In any

event, LeSportsac plainly raised serious questions going to the merits on this issue.

This conclusion is reinforced when evaluated against the rationale of the functionality defense: encouraging competition by preventing advances in functional design from being monopolized. See *Warner II, supra,* 724 F.2d at 331. K mart's ability to compete is not unduly hindered by the determination that LeSportsac's particular configuration of design features is nonfunctional and therefore eligible for protection. *Cf. In re Penthouse International Ltd.,* 565 F.2d 679, 682 (C.C.P.A.1977) (quoting *In re Mogen David Wine Corp.,* 328 F.2d 925, 933 (C.C.P.A.1964)). For example, the cotton carpet tape and carrying straps could be placed differently, contrasted in color with the bag or be made thicker or thinner; zipper pulls could be solid or nonrectangular; the repeating elliptical logo could be changed or placed differently. Indeed, K mart submitted to the district court a number of third-party bags that differ from the LeSportsac and K mart lines in many of the ways suggested above. *See also LeSportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602, 607–08 (S.D.N.Y.1979).

K mart argues that under this court's definition of functionality in *I.A. Fratelli Saporiti v. Charles Craig, Ltd.,* 725 F.2d 18 (2d Cir.1984), the particular configuration of features on its and LeSportsac's bags is functional because it is "an important ingredient in the commercial success of the product" or the "saleability of the goods." *Id.* at 19–20. *Charles Craig* was decided just two weeks after *Warner II, supra,* in which another panel of this court had criticized as confusing "language in the case law ... linking what is functional to the commercially successful features of the product." 724 F.2d at 330. This formulation, which appears in earlier cases as well, *see, e.g., Ives Laboratories, supra,* 601 F.2d at 643 (quoting *Pagliero v. Wallace China Co.,* 198 F.2d 339, 343 (9th Cir.1952)), has also been criticized for over-

inclusiveness. *See, e.g., Keene Corp. v. Paraflex Industries,* 653 F.2d 822, 824–25 (3d Cir.1981); *Vuitton et Fils, supra,* 644 F.2d at 773. Trade dress associated with a product that has accumulated goodwill, such as the LeSportsac line, will almost always be "an important ingredient" in the "saleability" of the product. A related difficulty with the "important ingredient" formulation, read literally, is that "it provides a disincentive for development of imaginative and attractive design. The more appealing the design, the less protection it would receive." *Keene Corp., supra,* 653 F.2d at 825. The *Inwood Laboratories-Warner II* formulation, in which a feature must be "essential to the use or purpose of the article" or must affect "the cost or quality of the article," *Warner II, supra,* 724 F.2d at 331, provides no such disincentive and is less susceptible to confusion or an overly broad interpretation.[3]

There is an obvious tension between *Warner II* and *Charles Craig,* since the latter relied on the "important ingredient" formulation and did not cite either *Warner II* or *Inwood Laboratories.* Yet the result in *Charles Craig* is not inconsistent with *Warner II.* In *Charles Craig,* the district court had found that plaintiff had an unregistered trademark in the design of its sofa, the distinctive feature of which was the interlocking design of the back cushions, which served to hold the cushions in place while presenting the appearance of "loose, free back pillows." This court reversed, finding the design to be "an important ingredient in the saleability of the product" and therefore functional. The cushion design, on which the plaintiff had previously held a United States design patent, plainly "constitutes an improvement in the operation of the goods" that ought not be monopolized (absent patent protection), and hence is functional under *Warner II* as well. See 724 F.2d at 331.

█ Although *Warner II* cast doubt on the continued vitality of the "important ingredient" formulation, we do not suggest

---

**3.** The problem of defining the outer limits of functionality is not of recent origin. See, e.g.,

*Zippo Manufacturing Co. v. Rogers Imports, Inc.,* 216 F.Supp. 670, 691–95 (S.D.N.Y.1963).

that it cannot be appropriately applied in certain circumstances. The "important ingredient" definition achieved its most quoted formulation in the context of a product, hotel china, the essential feature of which was the aesthetic appeal of its design. See *Pagliero, supra,* 198 F.2d at 343.[4] Of course, lightweight nylon bags, like many other products, are often bought in part for aesthetic reasons. In deciding the question of functionality at trial, the factfinder will be faced with answering the following: Are consumers likely to purchase a LeSportsac bag rather than that of a competitor principally because they find LeSportsac's particular combination of design features aesthetically pleasing, or will they buy principally because the product features serve to identify or distinguish the goods as genuine LeSportsac products? See *Vibrant Sales, Inc., supra,* 652 F.2d at 303–04; *Vuitton et Fils, supra,* 644 F.2d at 776. If the latter, the LeSportsac "look" primarily serves a legitimate trademark purpose—identifying the source of the product—and should be eligible for protection even though it is also an "important ingredient" in the product's commercial success. The district court found that the combination and arrangement of design features on LeSportsac's bags did (and apparently were intended to) serve the trademark purpose of identification. While the ultimate disposition of this question awaits a trial on the merits, the district court's finding, made for the purpose of a preliminary injunction, was not clearly erroneous.

B. *Secondary meaning*

■ Appellant's other contentions require less discussion. K mart challenges the district court's finding that the design elements of LeSportsac's bags have acquired a secondary meaning. The trade dress of a product has attained "secondary meaning" when the purchasing public associates that dress with a single producer or source rather than just with the product itself. *Inwood Laboratories, supra,* 456

U.S. at 851 n. 11, 102 S.Ct. at 2186 n. 11. In essence, K mart argues that LeSportsac presented insufficient evidence to establish secondary meaning. While LeSportsac might have presented additional evidence, it did offer proof of phenomenal sales success, substantial advertising expenditures, unsolicited media coverage, requests from third parties to license the use of its design and K mart's deliberate attempt to imitate its trade dress. Whether or not this evidence is sufficient to prove secondary meaning to the satisfaction of the ultimate trier of fact, it at least raised serious questions going to the merits, which is sufficient at this stage of the litigation.

■ K mart also argues that the fact of intentional copying, which the district judge found to be the "most persuasive evidence" of secondary meaning, cannot substitute for actual proof of secondary meaning. Citing *Mattel, Inc. v. Azrak-Hamway International, Inc.,* 724 F.2d 357, 361 (2d Cir.1983), K mart claims that the district court "should have demanded *some* proof of what the public thinks about plaintiff's design standing alone." But in *Mattel* we simply said that the district court did not abuse its discretion in declining to issue a preliminary injunction. In doing so we noted the lack of survey evidence. We did not establish any requirement that survey evidence of secondary meaning or customer confusion be introduced before a plaintiff may obtain a preliminary injunction. *See Thompson Medical Co., Inc. v. Pfizer Inc.,* 753 F.2d 208, 217 (2d Cir.1985) (to determine existence of secondary meaning, "every element need not be proved"). Such evidence is often desirable, as it may well be in the trial of this case. Nevertheless, we cannot say that the district court erred in finding that the evidence presented by LeSportsac was sufficient at this stage to meet its burden.

644 F.2d at 773–76.

---

**4.** The Ninth Circuit itself has sharply limited its *Pagliero* formulation. See *Vuitton et Fils,* supra,

## C. *Likelihood of confusion*

■ Having found that LeSportsac has at least raised serious questions as to the trademark status of its product, we turn now to LeSportsac's prospects for proving that K mart's bags infringed its trade dress. In enjoining the sale of the four lightweight bags, the district court found that LeSportsac "established not only a likelihood of confusion, but a virtual certainty of it." K mart argues that LeSportsac's proof was insufficient, focusing on the lack of direct proof of actual confusion. Here again, LeSportsac may well find it necessary or advisable to present additional evidence at trial, but at this stage its burden was only to raise a serious question of likelihood of confusion.

As to the four lightweight bags, the district court concluded that the "average consumer, seeing [K mart's] products in discount stores" may well "believ[e] them to have originated from [LeSportsac]," and that the bags are "remarkably similar." Apart from differences in feel and the wording on the marks, the bags are almost indistinguishable. Indeed, the district court found that K mart "deliberately copied the distinctive features of [LeSportsac's] bag." Where a product's design has achieved secondary meaning, confusion is a likely consequence of copying. See *Harlequin Enterprises, supra*, 644 F.2d at 949.

K mart's heavyweight knapsack is concededly less like its LeSportsac counterpart than are the other four bags. Nonetheless, here too we would not be justified in overruling the district court's conclusion that LeSportsac met its burden on likelihood of confusion. The heavyweight knapsack features a repeating elliptical logo, substantially the same as that on the other four bags, as well as the same hollow rectangular zipper pulls. In addition, the repeating logo is placed in precisely the same place— on the nylon trim just above the three compartment zippers—as it is on the LeSportsac knapsack. "[I]t is the 'combination of features as a whole rather than a difference in some of the details which must determine whether the competing product is likely to cause confusion in the mind of the public.' " *Id.* at 949 (quoting *Perfect Fit Industries v. Acme Quilting Co.*, 618 F.2d 950, 955 (2d Cir.1980)).

## D. *Irreparable injury and balance of hardships*

■ The district court also found that LeSportsac faces possible irreparable injury and concluded that the balance of hardships tips decidedly in its favor, determinations to which we ordinarily give substantial deference. See *Dallas Cowboys Cheerleaders, supra*, 604 F.2d at 206–07. In any event, we are persuaded that the district court here was correct. Likelihood of confusion is itself strong evidence that in the absence of an injunction LeSportsac might face irreparable harm. *Id.* at 207. Similarly, while K mart must store its bags pending the outcome of this litigation, the true hardships tip markedly in favor of LeSportsac. It would risk loss of both sales and goodwill if K mart were permitted to continue selling its confusingly similar bags pending resolution of this action. The district court was justified in concluding that the potential damage to LeSportsac's mark and goodwill in the absence of a preliminary injunction outweighs the short-term economic harm that K mart may suffer.

We conclude, therefore, that under all the circumstances the district court did not abuse its discretion in granting the preliminary injunction.

## III.

■ Finally, K mart contends that the district court erred in denying K mart's motion to modify the preliminary injunction. K mart proposed to sell its bags (the approximately 90,000 that remain on hand) accompanied by a hangtag prominently indicating K mart as the source of origin. Citing *Terkildsen v. Waters*, 481 F.2d 201 (2d Cir.1973), LeSportsac responds that K mart failed to appeal that portion of the district court's September 18 order denying the modification motion and that we are therefore barred from reviewing that denial. We disagree. Unlike the situation in

*Terkildsen,* K mart's notice of appeal can reasonably be construed as embracing all aspects of the September 18 order. In addition, while the notice of appeal here might have been more precise, *Terkildsen* itself stated that our practice generally is to construe a notice of appeal liberally. 481 F.2d at 206. Moreover, we have the power to modify the injunction if we believe it is too broad. Finally, LeSportsac has proffered no evidence suggesting it has been "misled by the mistake," if there was one, in the notice of appeal. 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 203.18, at 3–77 (2d ed. 1983). Accordingly, this court has jurisdiction to review the district court's order denying K mart's motion to modify the preliminary injunction.

■ As is so often the case, the issue of appealability requires more discussion than the merits of the question on appeal. Having determined that we may appropriately consider K mart's attack on the finding that the hangtags would not eliminate the likelihood of confusion, we readily conclude that the finding is not clearly erroneous. The proposed hangtag would be removable. Once the tag comes off, the bags are again virtually identical and likelihood of confusion remains. Moreover, as LeSportsac correctly points out, the equities of the situation are quite different than they would have been had K mart placed the proposed tags on the bags when they were first offered for sale. See *Johnson & Johnson v. Quality Pure Manufacturing, Inc.,* 484 F.Supp. 975, 980 (D.N.J.1979).

For the foregoing reasons, the orders of the district court are affirmed.