STANLEY–FIZER ASSOCIATES, INC., Plaintiff,

v.

SPORT–BILLY PRODUCTIONS ROLF DEYHLE, Rolf Deyhle, Telemundi, A.G., and Wolfgang Stein, Defendants.

No. 85 Civ. 2491 (RWS).

United States District Court,
S.D. New York.

April 28, 1985.

Aronsson Kerker & Ferst, New York City, for plaintiff; Nathan M. Ferst, New York City, of counsel.

Wender Murase & White, New York City, for defendants; Eric L. Gilioli, New York City, of counsel.

## OPINION

SWEET, District Judge.

Stanley-Fizer Associates, Inc. ("Stanley") has brought this motion pursuant to Fed.R. Civ.P. 65(a) to preliminarily enjoin defendants Sport-Billy Productions Rolf Deyhle, Rolf Deyhle, Telemundi, A.G., and Wolfgang Stein (collectively "Sport-Billy") from 1) terminating the agency agreement between Stanley and Sport-Billy; 2) employing any individual and/or entity other than Stanley for the purposes of procuring license agreements for the marks referred to in the complaint; and 3) entering into direct licensing agreements without the participation of Stanley. An evidentiary hearing having been held, the motion for preliminary injunctive relief is denied, pending further proceedings to determine the rights of the parties.

## Facts

Sport-Billy is the owner of proprietary rights and holds trademarks and copyrights on certain marks and designs. In order to make commercial use of these marks and designs in North America, Sport-Billy entered into an agency agreement with Stanley on April 1, 1981 and a subsequent agreement on December 3, 1982. The second agreement, which expires on December 31, 1986, requires that in return for a percentage commission Stanley will assist Sport-Billy in entering licensing agreements for certain of Sport-Billy's copyrights and trademarks. The relevant portions of the December, 1982 contract between Stanley and Sport-Billy are attached as Exhibit One.*

Stanley, formed in 1980, acts as an agent for companies wishing to license their trade names and trade marks. It also provides merchandising, direct mail, and "premium promotions" services for its consumers. Stanley's other clients have included the Board of Regents and the University of the State of New York; the Presidential Sports Award; Yoi Larsen, the jewelry designer; Claude Chassagne, the photographer; Lee Dunne, an author-playwright; the China Institute in America; the American Express Company; and Columbia Pictures.

Stanley alleges that Sport-Billy has breached the contract by 1) requiring that all funds earned under the license agreements with third parties be paid directly to Sport-Billy or, if received by Stanley, that they be paid to Sport-Billy without any deduction for commissions due to Stanley; 2) terminating the agreement in order to deprive Stanley of commissions it would earn on license agreements resulting from the 1986 World Cup Soccer Tournament in Mexico; and 3) utilizing "Sports Excellence Marketing" as an alternative licensing agent.

Paragraph 3 of the contract requires that all funds received by Stanley in its capacity as agent for Sport-Billy be held in trust and, less royalties kept by Stanley, be remitted to Sport-Billy within 30 days after the end of each calendar quarter. Paragraph 11 permits Sport-Billy to terminate the contract unilaterally in the event Stanley breaches its obligations under paragraph 3, and Sport-Billy contends that it properly terminated the contract pursuant to clause 11a, after giving Stanley the required 10 days notice of Stanley's default.

Sport-Billy maintains, and Stanley's testimony and the correspondence between Sport-Billy and Stanley introduced at the hearing establish, that in the last quarter of 1984 Stanley received $11,605.44 in total royalty payments, of which $8,123.80 was due to Sport-Billy by the close of January, 1985. Stanley testified that she attempted to execute this payment by instructing her bank, telephonically, to cable the $8,123.80 to Sport-Billy in Europe. The payment was not made, and on February 22, 1985 Sport-Billy by letter sought an explanation of the delay.

Joan Stanley, president of Stanley, testified that upon receipt of the February 22 letter she sought from her bank an explanation of the failure to transfer the funds, but was unable to find any evidence that the bank had received the initial order to transfer the funds. Although Stanley admitted that Sport-Billy had a right to the $8,123.80 in dispute, she stated that she made no efforts to transfer the funds once the failure of the initial transfer was discovered. On March 18, 1985, when payment had still not been made, Sport-Billy sent Stanley formal notice that the payment was lacking and demanded payment by March 31, 1985. The March 18 letter also sought collection of an interest-free loan in the amount of $21,034.26 that Sport-Billy had given Stanley, and which was payable "from royalties received by Stanley-Fizer prior to the end of December, 1985." Stanley disputed that she owed any part of the $21,024.26, claiming that these funds were not due until December 31, 1985.

Stanley responded to the March 18 letter by telexing Sport-Billy that "Your demand

* Ed. note: exhibit was not designated for publication.

for repayment is incorrect and we owe you no monies." Sport-Billy responded, in a telex of April 1, giving Stanley until April 10, 1985 to cure its nonpayment. In the absence of the necessary payment, Sport-Billy asserts it has terminated the agreement as permitted by paragraph 11 of the contract.

Stanley has claimed that Sports Excellence Marketing has interfered with its licensing program and destroyed its ability to function as an agent, exclusive or otherwise. This interference is the justification claimed by Stanley for its failure to pay the license fees concededly owing. No agreements were identified as having been frustrated by this interference. Further, Stanley apparently seeks by this action to claim substantial rights and commissions which may result if a proposed transaction goes forward involving Mexican World Cup coins.

**Law**

The standard for obtaining a preliminary injunction is well settled in this Circuit. A plaintiff must establish 1) possible irreparable injury and 2) either a) a likelihood of success on the merits or b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor. *Le Sportsac Inc. v. K Mart Corp.*, 754 F.2d 71 (2d Cir.1985); *Arthur Guinness & Sons, PLC v. Sterling Publishing Co.*, 732 F.2d 1095 (2d Cir. 1984).

■ Stanley alleges that it will suffer irreparable harm because termination of the contract will destroy Stanley's business. Stanley testified that the contract at issue provides 70–80% of Stanley's existing business and that termination of the contract would damage Stanley's reputation so that Stanley would be unable to acquire additional customers. A loss of business that is commercially life-threatening can constitute irreparable harm and can warrant a grant of a preliminary injunction. *Kayser-Roth Corp. v. Fruit of the Loom*, (slip op. 82 Civ. 8128) (S.D.N.Y. February 3, 1983); *R & G Affiliates, Inc. v. Knoll*

*International,* (slip op. 83 Civ. 4194) (S.D. N.Y. July 12, 1984) (Weinfeld, J.); *Newport Tire & Rubber Co., Inc. v. The Tire & Battery Corp.*, 504 F.Supp. 143 (E.D.N.Y. 1980) (reviewing Second Circuit authorities). I credit Stanley's testimony that termination of the contract at issue will destroy the company, and so I find irreparable injury.

■ However, I do not find either a likelihood of success on the merits or a sufficiently serious question going to the merits to make them a fair ground for litigation. The evidence presented at the preliminary injunction hearing appeared to establish a termination of the contract by Sport-Billy as permitted by paragraph 11. Stanley conceded that payments due Sport-Billy were not made, that Stanley was given notice of the nonpayment and an opportunity to cure the breach, and that only in the absence of Stanley's curing its failure to pay did Sport-Billy terminate the contract. These are sufficient grounds for termination.

■ Stanley has put forth as justifications for her nonpayment certain alleged improper activity by Sport-Billy. None of the allegations is related, however, to Stanley's default in remitting the funds. Moreover, sufficient evidence to substantiate the allegations of improper activity by Sport-Billy was not introduced at the hearing. Stanley's complaint that Sport-Billy was requiring licensees to pay royalties directly to Sport-Billy, rather than to Stanley, does not amount to an allegation of a breach. Paragraph 3(a)(iv) of the contract specifies that Sport-Billy may rely upon Stanley to "receive on behalf of the Company royalty payments ... when requested to do so by the company." Stanley was not given a contractual right to serve as a collection agent, and Sport-Billy is within its right when it seeks direct payment by licensees.

Sport-Billy also is given the right, in paragraph 1(d), to enter license agreements without the assistance of Stanley, as long as Stanley had not initially solicited the licensees and Stanley was given notice and

its normal compensation. Allegations that all direct contacts are impermissible are therefore groundless. There was also no evidence introduced to substantiate the allegation that Sport-Billy had entered contracts in violation of 1(d). Sport-Billy has asserted that Sports Excellence Marketing is simply an extension of Sport-Billy itself, and, consequently, it also is free to reach licensing agreements as provided by paragraph 1(d). This naked assertion is uncontradicted by any evidence presented by Stanley. The delineation between Sport-Billy, Wolfgang Stein, apparently its principal actor, and Sports Excellence Marketing has not been established by the evidence thus far presented by either party. Moreover, no evidence was presented to substantiate the allegation that Sports Excellence had entered into any licensing agreements with respect to marks to which Stanley had exclusive licensing rights.

Finally, although there is ambiguity with respect to whether or not the contract included the marks of the 1986 World Cup, the evidence presented thus far indicates that the rights to license these marks was not conferred in the contract. Both the November 29, 1982 letter from Sport-Billy to Stanley, even if not received before the contract was signed, and the May, 1984 letter from Stanley to Sport-Billy proposing amendments to the contract so that these signs would be included, indicate an understanding by both parties that these marks were not covered by the contract. Sport-Billy's activities with respect to these marks are therefore not violations.

Stanley's evidence at this early stage does not indicate either a likelihood of success or the existence of substantial grounds for litigation and a balance of hardship in Stanley's favor. Moreover, the evidence does not excuse the breach by Stanley. The termination by Sport-Billy based on the evidence presented thus far appears justified.

**Conclusion**

The evidence adduced at the hearing for a preliminary injunction does not warrant the grant of the relief sought. However, additional discovery may alter these initial findings, and the denial of the injunction at this time does not prejudice Stanley's ultimate success on the issues in dispute.

The motion for a preliminary injunction is denied.

**IT IS SO ORDERED.**