**I. APPEL CORPORATION, Plaintiff,**

v.

**MUNSINGWEAR, INC., Defendant.**

**No. 86 Civ. 3729–CSH.**

United States District Court,
S.D. New York.

July 10, 1986.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y. (J. Stanley Shaw, of counsel), Abelman, Frayne, Rezac & Schwab, New York City (Jeffrey A. Schwab, of counsel), for plaintiff.

Nims, Howes, Collison & Isner, New York City (Kenneth R. Umans, of counsel), for defendant.

HAIGHT, District Judge.

Plaintiff I. Appel Corporation ("I. Appel") brings this action for injunctive relief and damages for alleged violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ("Section 43(a)"), trademark infringement, 15 U.S.C. § 1114 *et seq.*, and related state claims. Subject matter jurisdiction in this Court is predicated upon 28 U.S.C. § 1338(a) and principles of pendent jurisdiction. Plaintiff now moves for a preliminary injunction.

The case concerns defendant's manufacture and sale of brassieres under the trade name "The Active Collection." Plaintiff alleges that defendant's "Sports-Woman Bra," formerly the "Running Free Bra," is a copy of plaintiff's "The Running Bra." Plaintiff also contends that defendant breached a contractual agreement between the parties in which defendant agreed not to produce a brassiere "identical" to plaintiff's "Running Bra." Finally, plaintiff asserts that defendant's use of "The Active Collection" is an infringement of its federally registered trademark "The Active Woman Collection" and of various rights under New York law. By order to show cause signed May 12, 1986, plaintiff moved for a temporary restraining order and a preliminary injunction prohibiting defendant from manufacturing, advertising, or promoting its "Sports-Woman Bra" or advertising or promoting products under the trade name "The Active Collection."[1] By Memorandum Opinion and Order of May 15, 1986, familiarity with which is assumed, the motion for a temporary restraining order was denied and counsel were directed to address the issue whether plaintiff's complaint should be dismissed. Having considered the present record and cases cited by counsel, I decline to dismiss the action at this time, but deny the preliminary injunction.

I. *Alleged Infringement of the Trademark "The Active Woman Collection"*

In its complaint plaintiff alleges that use of the slogan "The Active Collection" infringes on its federally registered trademark "The Active Woman Collection" and seeks injunctive relief and damages. In its motion for preliminary injunctive relief, plaintiff seeks the termination of the use of

---

1. In its complaint and in its moving papers, plaintiff also claims that defendant's "V–Bra" is an infringing copy of plaintiff's "Racquet Bra" and that defendant's use of the term "V–Bra" infringes plaintiff's common law trademark rights on "V–Back." However, it offered no evidence to support these claims and appeared to abandon them for purposes of the pending motion.

the slogan and of the distribution of all materials utilizing the slogan.

Defendant represents that it has already acceded to these demands and has voluntarily stopped using the term "The Active Collection." Specifically, it asserts that the term is no longer on merchandise "hang-tags" (Aff. of Moore ¶ 8), and that it has removed the term from its price lists and all brochures which will be published in the future. (Aff. of Moore ¶ 4).

Defendant asserts that its voluntary termination of use of "The Active Collection" moots plaintiff's trademark claim. I disagree for two reasons: (1) voluntary cessation does not moot a motion for injunctive relief, and (2) plaintiff's claim for damages remains.

■■■ It is well settled that voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of that practice. *E.g., City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982). Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power. *Id.* at 289, 102 S.Ct. at 1074. However, since defendant asserts that it has already undertaken to comply with plaintiff's demands, it should have no objection to entering into a stipulated order to that effect. Therefore, I direct defendant to settle an order of permanent injunction on five (5) days' notice.[2]

Plaintiff's trademark claim also remains a live case or controversy because plaintiff has asserted a claim for damages. Defendant conclusorily asserts that this claim is "frivolous"; but if defendant so believes, it may, if so advised, move for summary judgment. Until judgment is entered on that claim, by a Rule 56 motion or through trial on the merits, it remains a live issue.[3]

## II. Section 43(a) Claim Regarding The "Sports-Woman Bra"

Plaintiff asserts that defendant's manufacture and distribution of the "Sports-Woman Bra" constitutes false designation of origin, pursuant to 15 U.S.C. § 1125(a), and violates state contract and unfair competition law. For the reasons that follow, I decline to issue the injunction and dismiss the state claims without prejudice.

The essence of plaintiff's Section 43(a) claim is that the design of defendant's "Sports-Woman Bra" brassiere constitutes a false designation of origin, infringing plaintiff's rights in its "Running Bra."

Since its enactment in 1946 as part of the Federal Trademark Act, Section 43(a)'s broad language and potentially expansive scope have been held to embrace a variety of unfair trade practices. *See, e.g., American Brands, Inc. v. R.J. Reynolds Tobacco Co.,* 413 F.Supp. 1352, 1355–56 (S.D.N.Y. 1976). Under these broad interpretations of Section 43(a), the design of a product itself may function as its packaging, serving to distinguish it from other products, and hence be protectable trade dress under Section 43(a). *Le Sportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 75 (2d Cir.1985).

■■■ In order to establish a claim under Section 43(a) based on product design, plaintiff must show that the copied design has acquired secondary meaning in the marketplace and be nonfunctional. *Vibrant Sales, Inc. v. New Body Boutique, Inc.,* 652 F.2d 299, 303 (2d Cir.1981). Plaintiff's Section 43(a) claim appears to founder on the functionality prong of this test. "A feature is functional if it is essential to the use or purpose of the article or that affects

---

**2.** Plaintiff contends that defendant has not consented to all the relief it seeks regarding use of "The Active Collection" in that defendant has not recalled its catalogs containing that term. However, no such recall order was sought in plaintiff's moving papers. It is therefore not properly presented here.

**3.** For the same reasons, plaintiff's state claims as to "The Active Collection" are not moot. However, for the reasons discussed below, I dismiss those claims without prejudice.

the cost or quality of the article," *Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982), or if it " 'constitutes an improvement in the operation of the goods.' " *Le Sportsac, supra,* 754 F.2d at 76 (quoting *Warner Brothers, Inc. v. Gay Toys, Inc.,* 724 F.2d 327, 331 (2d Cir. 1983)). The feature is "essential" only if the feature is dictated by the functions to be performed; a feature that merely accommodates a useful function is not enough. *Le Sportsac,* 754 F.2d at 76. "The functionality defense ... was developed to protect advances in functional design from being monopolized. It is designed to encourage competition and the broadest dissemination of useful design features." *Id.* (quoting *Warner Brothers, supra,* 724 F.2d at 331).

■ In my view, the brassieres themselves constitute sufficient evidence to satisfy defendant's burden. From inspection of the exhibits, the design of plaintiff's "Sports-Woman Bra" appears to be purely functional. Certainly, to the lay observer there are no distinctive features of the brassiere which appear other than functional.

The papers submitted by the plaintiff do not, in my view, raise an issue of fact requiring an evidentiary hearing on this issue. In his affidavit, Harold Stern, who terms himself a fashion consultant on women's undergarments, addresses in rather opaque terms the relationship between the aesthetic design of the "Running Bra" and its functionality. Stern asserts that the brassiere has "distinctive ornamental features, separate and apart from functionality" (Aff. ¶ 11), but the remainder of the affidavit fails to support this assertion. He fails to identify any specific ornamentation or decoration adopted for its purely aesthetic value.

Stern does assert that the "Running Bra" contains elements designed to convey a particular "impression"—the impression that the brassiere will be comfortable and appropriate for athletic use. (Aff. ¶¶ 5, 6, 9). But he goes on to state that these same features, in a well-designed brassiere, "will deliver upon the promise made" by the look of the garment. According to Stern, the "Running Bra" is such a brassiere. (Aff. ¶ 4). "The aesthetics of THE RUNNING BRA," he asserts, "convey the end benefit that the product is particularly suited for use during athletic activity." (Aff. ¶ 9). These "aesthetic" elements, by Stern's own averments, do not merely accommodate a useful function; they improve the operation of the brassiere, and they are therefore functional. *See Le Sportsac, supra,* 754 F.2d at 76. Although Stern asserts that a brassiere could be designed that looks different but performs in a "substantially similar manner on the body," (Aff. ¶ 3), the remainder of his affidavit indicates that the "aesthetic" elements of the "Running Bra" also constitute an improvement in the goods.

■ Even if, as Stern appears to deny, there were elements of the "Running Bra" which merely served to create an impression of usefulness, but which did not deliver on that promise, these elements would be functional under controlling authority. Even when a particular feature or combination of features is designed solely to impart a certain "look" to a product, those elements may still be held "functional." Ultimately, in deciding the question of functionality at trial, the factfinder must determine if the "look" of an item appeals to customers because it was aesthetically pleasing or because the product features served to identify the goods with a particular source. *Id.* at 78. That is, to state a Section 43(a) claim, the plaintiff must show that the elements serve a "trademark purpose—identifying the source of the product." *Id.*

Almost in its entirety, Stern's affidavit argues that the allegedly aesthetic elements of the "Running Bra" appeal to the consumer because of their apparent usefulness, not because they convey that the brassiere is genuinely that of the plaintiff. He asserts that "in designing a brassiere there are many objectives; principally pleasing aesthetics, fit and comfort."

These objectives do not include a "trademark purpose"—identifying the goods as plaintiff's.

Stern does make one conclusory assertion that the "Running Bra" is associated "in the industry" with plaintiff. He states that when plaintiff introduced the "Running Bra," "it was ... 'news' in the industry. It was a very well thought out design. To my knowledge the bra design became synonimous [sic] with [plaintiff] in the industry." Assuming *arguendo* that "the industry" is the appropriate constituency, the same, however, could well be said of most well-designed, successful products. To hold such design elements non-functional simply because they have become successful would defeat the very purpose of the functionality requirement: "to encourage competition by preventing advances in functional design from being monopolized." *Le Sportsac, supra,* 754 F.2d at 77. *See Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 122, 59 S.Ct. 109, 115, 83 L.Ed. 73 (1938) (pillow shape of shredded wheat cereal functional because the cost of biscuit would be increased and quality decreased by changing shape); *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.,* 626 F.2d 193, 195 (1st Cir.1980) (cited with approval in *Le Sportsac, supra,* 754 F.2d at 76) (affirming district court's finding that two-tiered structure of wood stove was functional, even though it was asserted to be its "most distinctive feature").

Finally, Stern asserts that it is possible to design a brassiere which looks like the "Running Bra" but which performs differently on the body. It is difficult to perceive any relevance in this assertion. Stern does not indicate that defendant's brassiere fails to achieve the quality of plaintiff's. And plaintiff points to no authority indicating that a defendant, to sustain the defense of functionality, must actually have succeeded in duplicating the quality of the plaintiff's product. According to the case law, defendant's burden is to show that the elements they copied were functional. The result might be different if there was evidence that defendant intentionally copied only the form, and not the function, of the garment. In such a case it might be that the purpose served by the functionality doctrine—prevention of monopolies on functional design elements—would be absent and the defendant might be shown simply to be attempting to trade on plaintiff's good will. But no such evidence has been adduced here—indeed, the evidence adduced to date indicates that defendant has attempted to create, and has created, a brassiere suitable for athletic use.

Because plaintiff has created no genuine issue of fact regarding the functionality of the brassiere, there is no need for an evidentiary hearing on this issue. I do not believe plaintiff has shown a "serious question going to the merits" or likelihood of success on the merits, and therefore insofar as plaintiff's motion for preliminary injunction relies on Section 43(a), it fails. *See Le Sportsac,* 754 F.2d at 75.

### III. *Pendent State Claims*

Plaintiff also bases its claim for relief regarding the "Sports-Woman Bra" on state breach of contract and unfair competition law. However, I decline to entertain jurisdiction over these state claims.

Pendent jurisdiction is a doctrine of discretion. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Federman v. Empire Fire and Marine Insurance Co.,* 597 F.2d 798, 809 (2d Cir.1979). Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims. *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139. Similarly, if state issues substantially predominate, whether in terms of proof, the scope of the issues raised, or the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. *Id.*

In federal trademark cases, federal jurisdiction over state unfair competition claims has been specifically authorized by

statute. Section 1338(b), 28 U.S.C., provides:

> The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trade-mark laws.

Section 1338(b) incorporates the principles for exercise of pendent jurisdiction set forth in *Gibbs:* while section 1338(b) affords district courts the power to entertain state unfair competition claims, it leaves the decision whether to exercise that power in the trial court's discretion. *A.H. Emery Co. v. Marcan Products Corp.,* 389 F.2d 11, 19–20 (2d Cir.), *cert. denied,* 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968); *Coleman v. Corning Glass Works,* 619 F.Supp. 950, 957 (W.D.N.Y.1985); *Smith v. Weinstein,* 578 F.Supp. 1297, 1304–05 (S.D. N.Y.), *aff'd mem.,* 738 F.2d 419 (2d Cir. 1984).

Although I consider I. Appel's state claims sufficiently related to its federal claims to afford this Court jurisdiction over those state claims, I decline in my discretion to exercise jurisdiction over the state claims presented here. It appears likely that plaintiff's Section 43(a) claims can be disposed of quickly; and after entry of the consented-to equitable relief on the trademark claim, it appears that only questions of legal relief may remain. In my view, the state claims are likely to dominate this action; and because this litigation is at a very early stage, dismissal of the state claims is unlikely to result in any unfairness to the parties. *See Smith, supra,* 578 F.Supp. at 1306. The state claims are therefore dismissed without prejudice and without costs.

*Conclusion*

Plaintiff's motion for a preliminary injunction with respect to the "Sports-Woman Bra" is denied.

Defendant is directed to settle an order of permanent injunction with respect to plaintiff's claims regarding defendant's use of "The Active Collection" on five (5) days' notice.

Plaintiff's state claims—the fourth, fifth, seventh, eighth, ninth and tenth causes of actions—are dismissed without prejudice and without costs.

The parties are directed to proceed on any remaining issues in accordance with the Scheduling Order entered concurrently herewith.

It is SO ORDERED.