**MAHER & MAHER, INC., d/b/a Fun Products, Plaintiff,**

v.

**UNISONIC PRODUCTS CORP., Defendant.**

No. 89 Civ. 2973 (KTD).

United States District Court, S.D. New York.

July 26, 1989.

Weiss Dawid Fross Zelnick & Lehrman, P.C. (Susan Upton Douglass, Stephen F. Mohr, Glenn Mitchell, of counsel), New York City, for plaintiff.

Ostrolenk, Faber, Gerb & Soffen (Edward A. Meilman, Marvin C. Soffen, of counsel), and Dow, Lohnes & Albertson (Howard Graff, Neal S. Barlia, of counsel), New York City, for defendant.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Maher & Maher, Inc. ("Maher"), brought on a motion by Order to Show Cause for a preliminary injunction against defendant Unisonic Products Corp. ("Unisonic"). I held a hearing on the preliminary injunction on July 18, 1989. At the close of the hearing I granted a restraining order and preliminary injunction, with written findings to follow, on the condition that Maher post a $1000 bond. The following constitute my findings of fact and conclusions of law upon which my decision to grant the preliminary injunction is based.

### FACTS

This is a civil action for trade dress infringement. Maher alleges false designation of origin, false description and representation, and unfair competition in violation of 15 U.S.C. § 1125(a) (1985 & Supp. III 1985) and common law, and deceptive acts and practices in violation of N.Y.Gen. Bus.Law § 349 (McKinney 1988). The products involved in this case are novelty telephones that utilize the familiar "slimline" or "trimline" shape.

Maher's novelty telephone is called "METROLIGHT." METROLIGHT has a clear plastic outer casing that reveals a combination of brightly colored internal components and small flashing neon lights. Maher originally conceived the idea for METROLIGHT and began market and product research in the spring of 1988. As a result of this research Maher chose to approach BellSouth Products ("BellSouth") with its idea. Following discussions, at least some aspects of which were apparently confirmed by letters, an agreement was entered into whereby Maher would design METROLIGHT as a variation on the "Straight Talk II" telephone design marketed by BellSouth.

Maher, working with components supplied by BellSouth, designed METROLIGHT's appearance by adding flashing lights and choosing the shades and distribution of color among the Straight Talk II components. The same design is used for each METROLIGHT. When Maher was satisfied with its final product design, BellSouth arranged to have METROLIGHT manufactured by its supplier, Delos.

As marketed to the public, METROLIGHT's packaging bears both Maher's "FUN PRODUCTS" registered trademark and BellSouth's trademark. Upon looking at the packaging, a consumer is likely to identify FUN PRODUCTS as METROLIGHT's producer and BellSouth as METROLIGHT's quality standard. Indeed, that is the common description offered by a number of media reports that describe METROLIGHT. See, e.g., Plaintiff's Trial Exhs. 3, 4, 9, 14, 18.

Despite the relationship with BellSouth, Maher has apparently maintained full responsibility for marketing METROLIGHT. In January 1989 Maher introduced METROLIGHT at a trade show and enjoyed a positive reception from retailers. It has also been well received by marketing publications and the buying public.

Between January 1989 and April 1989, Maher became aware that Unisonic was marketing a similar phone named "PHONEWORKS." Several retailers that expressed an interest in ordering METROLIGHT ordered PHONEWORKS instead. Maher responded by sending a "cease and desist" letter to Unisonic. Despite the letter, on April 30, 1989, while preparing for a

trade show in the New York Javits Center, Maher noticed that Unisonic was exhibiting PHONEWORKS.

Upon close inspection of Unisonic's display booth, Maher's representative Lisa Tarta noted that many of the identifying characteristics of METROLIGHT's color scheme were duplicated on PHONE-WORKS. These characteristics included: a white circuit board with green transistors and rainbow wire coils, a yellow bell in the base, a yellow sponge in the handset, and flashing lights in certain locations. The only significant distinctions between MET-ROLIGHT and PHONEWORKS appeared when the handsets were lifted from their bases.[1] PHONEWORKS had a slightly different configuration of the dial-key pad, no BellSouth mark on that pad, and black ink over the lower corner of the colorful template on the phone base such that it appeared possible that the FUN PRODUCTS mark had simply been covered. The packaging is also substantially similar in appearance save, again, for the presence of the trademarks.

BellSouth is apparently no longer participating in the manufacture of METRO-LIGHT. Maher believes that this is because Maher could not supply a sufficient letter of credit. Delos, the manufacturer used by BellSouth, is now bankrupt. Maher is now working directly with a new manufacturer and is eliminating the Bell-South mark from METROLIGHT.

Unisonic argues that because of Maher's relationship with BellSouth, Maher is without standing to protect its phone design. Unisonic also argues that agreements between Maher and other producers of clear-casing novelty telephones, whose products are not at issue in this action, bar Maher from asserting trade dress infringement against Unisonic. The agreements set design parameters within which the other producers' clear-casing phone will not be considered infringing on METROLIGHT's design. *See, e.g.,* Defendant's Trial Exh.

B. These agreements apparently represent the result of negotiations between Maher and the other producers after Maher sent a cease and desist letter similar to that sent to Unisonic. Finally, Unisonic argues that Maher's elimination of BellSouth's mark and use of a new producer without changing the appearance of METROLIGHT will also create confusion in the marketplace. Unisonic presented no witnesses at the hearing.

## DISCUSSION

It is well-settled law in this Circuit that a party seeking a preliminary injunction must establish

(a) irreparable harm, and either (b) a likelihood of success on the merits, or (c) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [the movant's] favor.

*American Cyanamid v. Campagna Per Le Farmacie,* 847 F.2d 53, 55 (2d Cir.1988). *See also Stormy Clime Ltd. v. Progroup, Inc.,* 809 F.2d 971, 973 (2d Cir.1987). To establish a likelihood of success on the merits in a trade dress infringement action, the party seeking the injunction must show that

the trade dress of its product has acquired secondary meaning in the marketplace and that the design of the competitor's product is confusingly similar to that of the plaintiff's product. Even if a manufacturer makes both of these showings, the competitor can prevail ... by showing that the similar arrangement of features is functional.

*Stormy Clime,* 809 F.2d at 974 (citations omitted).

Trade dress of a product refers to a product's packaging, labeling, or, under certain circumstances, design. *Id.* It " 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, [or] graphics.' " *Id.* (quoting *John H. Harland*

---

1. Although Maher put into evidence samples of METROLIGHT and PHONEWORKS, Plaintiff's Trial Exhs. 2 and 32 respectively, the relevant description of the phones is taken primarily

from testimony as the PHONEWORKS sample observed on April 30, 1989 trade show is not the exact phone introduced at the hearing.

Co. v. Clarke Checks, Inc., 711 F.2d 966, 980 (11th Cir.1983)). A product's trade dress has acquired secondary meaning "when the purchasing public associates that dress with a single *producer or source* rather than just with the product itself." *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 78 (2d Cir.1985) (emphasis added). Evidence sufficient to establish secondary meaning may include proof of sales success, media coverage, third-party requests to license the use of a design, and deliberate attempts to imitate a trade dress design. *Id. See also 815 Tonawanda St. Corp. v. Fay's Drug Co., Inc.*, 842 F.2d 643, 647–48 (2d Cir.1988). For the following reasons, I find that the evidence submitted at the hearing before me is sufficient to establish that METROLIGHT's trade dress has acquired secondary meaning in the marketplace.

The trade dress Maher seeks to protect consists of the specific scheme created by particular color shades, color combinations and light locations in the METROLIGHT. Although unisonic argues that Maher is not the actual "producer" of METROLIGHT because BellSouth acts as a go-between with the manufacturer, it does not dispute that Maher created METROLIGHT's color-scheme and that Maher is the "source" of the METROLIGHT product. Maher has presented evidence that it is currently marketing METROLIGHT and has a direct pecuniary interest in its sale that is injured by the competing sales of PHONEWORKS. Such potential for a commercial or competitive injury is sufficient to establish standing to bring a trade dress claim. *Berni v. International Gourmet Restaurants of America, Inc.*, 838 F.2d 642, 647–48 (2d Cir.1988); *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 124–25 (2d Cir.1984).

In support of its claim that its color-scheme is trade dress that has secondary meaning in the marketplace, Maher presents evidence of both METROLIGHT's rapid sales success and its favorable and extensive non-advertising media coverage. I find that the media coverage demonstrates that although METROLIGHT is associated with both BellSouth and Maher's FUN PRODUCTS, the color-scheme is associated with FUN PRODUCTS.

Unisonic offers proof that Maher has entered agreements permitting other producers to market clear-casing novelty telephones. I find that this proof further supports Maher's claim that METROLIGHT's color-scheme is distinctive and is recognized in the marketplace. Although such agreements are not the legal equivalent of licenses, they are evidence that others in the trade recognize that the color-scheme is the property of Maher. Unisonic's plain attempt to exactly imitate METROLIGHT provides further evidence that METROLIGHT has acquired secondary meaning in the marketplace.

Maher likewise meets its burden of demonstrating that Unisonic's PHONEWORKS is confusingly similar to METROLIGHT. Apart from the trademark on their labels and a minor functional variation in the buttons on the dial-key pad, the color-schemes of METROLIGHT and PHONEWORKS are virtually identical. Each component part of each phone is separately and boldly colored in either red, green, yellow, blue, or purple. The colors are consistently distributed throughout each phone such that a glance at either phone from any direction would reveal essentially the same color distribution among the same parts. While there are some variations in the allocation of color to certain minor pieces, it is the "combination of features as a whole rather than a difference in some of the details which must determine whether the competing product is likely to cause confusion in the mind of the public." *Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 949 (2d Cir.1981) (quoting *Perfect Fit Indust., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 955 (2d Cir.1980), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982)). Moreover, Maher presents evidence that the two products are competing for marketing to the identical market of consumers in identical retail outlets and are similarly advertised. I find that the average consumer would not recognize the differences between the two products without being aware of and specifically looking for them.

In addition to the appearance and marketing similarities, the proof indicates that Unisonic deliberately imitated METROLIGHT's color tones and combinations. Unisonic may also have, at least initially in its trade show presentation, used a phone manufactured by Delos to Maher's exact specifications. Such intentional copying is further proof of likelihood of confusion in the marketplace. *See Harlequin Enterprises*, 644 F.2d at 949.

■ Based on the foregoing, I find that there is a likelihood of confusion of the Maher and Unisonic products. This showing that there is a likelihood of confusion also establishes that there is a risk of irreparable harm. *See Charles of the Ritz Group v. Quality King Distributors, Inc.*, 832 F.2d 1317, 1321 (2d Cir.1987).

Unisonic asserts that the PHONEWORKS design does not infringe on METROLIGHT trade dress because the similar features of METROLIGHT and PHONEWORKS are important to their commercial success and therefore functional. However, a "distinctive design or arrangement of features that is an important ingredient in the commercial success of a product but is not 'essential to the use or purpose' of the product and does not 'affect[ ] the cost or quality' of the product could be protectable trade dress." *Stormy Clime*, 809 F.2d at 977 (quoting *Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982)) (bracketed material in original). Indeed, the Second Circuit has recently noted that "the fact that a design feature performs a function does not make it essential to the performance of that function; it is instead the absence of alternative constructions performing the same function that renders the feature functional." *Brandir International, Inc. v. Cascade Pacific Lumber Co.*, 834 F.2d 1142, 1148 (2d Cir. 1987).

The intended functions of both METROLIGHT and PHONEWORKS are use both as a telephone and as a colorful conversation piece that reveals its inner workings and flashes lights when it rings. The relevant product features are the components necessary to function as a telephone, a clear casing that allows viewing of those components, and bright colors and lights arranged among those elements. As previously noted, Maher asserts only that METROLIGHT's particular color-scheme—its organization of component parts, choices of color, location of color, and location of lights—are protected trade dress. This design feature is obviously nonfunctional; any variance in color shades, locations of colors, or configuration of lights would serve the revealing and colorful design function. Certainly there are innumerable alternative constructions available within the color spectrum alone. Therefore, I find that the specific color-scheme and light pattern of the METROLIGHT and PHONEWORKS products are nonfunctional.

Finally, I find that Maher risks irreparable harm and that the balance of hardships tips decidedly in its favor. This finding is based both on the likelihood of confusion noted above and Maher's offer of proof of specific occasions where sales were lost to the Unisonic product. Maher risks loss of both sales and goodwill if Unisonic is permitted to sell its confusingly similar product during the pendency of this action. In addition, Unisonic presented no evidence that it would suffer any harm during the pendency of this action. Thus, I find that the balance of hardships is clearly in Maher's favor.

■ In sum, Maher has satisfied its burden of establishing that it has standing to bring this action, that it faces irreparable injury, that it is likely to succeed in proving that METROLIGHT's color-scheme has acquired a secondary meaning in the marketplace, that Unisonic's PHONEWORKS color-scheme is confusingly similar, that the color-scheme is not functional, and that the balance of hardships tips decidedly in its favor. Unisonic is hereby enjoined from selling PHONEWORKS during the pendency of this action.

Submit order on five days' notice within ten days of the date of this opinion.