**FABRICATION ENTERPRISES, INC., Plaintiff,**

v.

**The HYGENIC CORPORATION, Defendant.**

No. 93 Civ. 6574 (CLB).

United States District Court, S.D. New York.

April 14, 1994.

Thomas W. Maroney, Maroney, Ponzini & Spencer, Tarrytown, NY, for plaintiff.

Robert M. Gippin, Buckingham, Doolittle & Burroughs, Akron, OH, R. Goodman,

Kurzman & Eisenberg, White Plains, NY, for defendant.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

In this litigation between plaintiff Fabrication Enterprises, Inc. ("Fabrication"), a distributor of color coded resistive exercise bands used in the rehabilitation and health care field, and defendant The Hygenic Corporation ("Hygenic"), a manufacturer of those bands, Fabrication has asserted an antitrust claim alleging that Hygenic has violated § 2 of the Sherman Act (15 U.S.C. § 2), which prohibits monopolization or attempts to monopolize in interstate commerce. Hygenic has accused Fabrication of trademark infringement and trade dress infringement in violation of Lanham Trademark Act § 43(a) (15 U.S.C. § 1125(a)).

Fabrication moves for partial summary judgment under Fed.R.Civ.P. 56 declaring that the trade dress of defendant Hygenic is functional and dismissing Hygenic's counterclaims alleging trademark and trade dress infringement. Hygenic moves for partial summary judgment dismissing Fabrication's antitrust claims. Hygenic also moves to strike declarations of Fabrication's witnesses submitted in support of Fabrication's position on these motions on the ground they constitute inadmissible hearsay.[1]

Fabrication's motion to dismiss Hygenic's trade dress and trademark claims, and Hygenic's motion to dismiss Fabrication's antitrust claim are granted.

## Trade Dress

The color scheme of Hygenic's resistive exercise bands and tubing is not a registered trademark in the U.S. Patent and Trademark Office. Hygenic asserts that color scheme is a trademark under New York common law, and that Fabrication has used Hygenic's goodwill and business value to confuse consumers.

The products in dispute are progressive resistance exercise products which are sold to healthcare providers. Once out of their packaging, the levels of resistance for the variety of bands and tubing are determined by their color. Doc. 25, Anita Simons Declaration. Since 1978, Fabrication has sold progressive resistance exercise products to distributors and dealers who resell directly to hospitals, clinics and physical and occupational therapists. Since 1977, Hygenic had manufactured its products under the trademark THERA–BAND. From 1977 until 1980, these Hygenic bands were sold in only one color, black.

Since 1979, Fabrication has sold Hygenic's THERA–BAND. In 1983, Fabrication also began distributing color-coded progressive resistance exercise *tubing* (not bands which are in dispute here) for the physical and occupational therapy market under Fabrication's own trademark. The color coding used on the tubing is identical to the color coding used on THERA–BAND. Doc. 23, Plaintiff's Rule 3(g) Statement, ¶ 24.

At about the same time Hygenic introduced its color scheme for bands and tubing, other companies color coded progressive resistance exercise hand putties, using the same first four colors used by THERA–BAND to convey the same resistances. In 1990, Hygenic introduced a THERA–BAND strip which is a progressive resistance hand exercise product with the same color coded format.

A characteristic of a product is functional when important to the usefulness of the item. Such a characteristic cannot become the exclusive property of any member of an industry. *See, Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). Aspects of the appearance of a product which are arbitrary—chosen for attractiveness and brand identification, by contrast, may be protected from deliberate copying which might tend to cause customer confusion. *LeSportsac v. K Mart*, 754 F.2d 71 (2d Cir.1985).

---

1. No evidence derived from affidavits or witnesses challenged by Hygenic were taken into account in today's ruling. The propriety of their use at trial or on other occasions need not be considered now and can be raised at the final pretrial conference or when such use is requested.

Functionality is a defense, and, thus, the burden of proof is on the party asserting functionality. *LeSportsac Inc. v. K Mart Corp.,* 754 F.2d 71, 76 (2d Cir.1985).

█ The purpose of the functionality defense is "to protect advances in functional design from being monopolized. It is designed to encourage competition and the broadest dissemination of useful design features." *Warner Bros., Inc. v. Gay Toys Inc.,* 724 F.2d 327, 331 (2d Cir.1983) (footnote omitted); *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.,* 834 F.2d 1142, 1148 (2d Cir. 1987).

█ Colors may be used solely to attract attention or to distinguish a brand from competing wares. When, as here, colors are used to identify or differentiate *characteristics* of the product as opposed to its *source or origin,* color has a functional use and cannot be made the exclusive property of any particular producer or seller. See *Inwood, supra; Playskool v. Product Development,* 699 F.Supp. 1056, 1061 (E.D.N.Y.1988). A contrary ruling would "hinder competition or impinge upon the rights of others to compete effectively in the sale of the goods." *Sicila de R. Biebow & Co. v. Cox,* 732 F.2d 417, 429 (5th Cir.1984).

█ It is undisputed that the colors of the resistant bands are intended to distinguish levels of resistance. This makes the color scheme functional. Numerous other means of making a given brand distinctive can be utilized. There is no necessity to strain to treat the color codes as nonfunctional in order to permit Hygenic to protect the integrity or identity of its own source products in the marketplace.

Consequently, partial summary judgment is granted dismissing Hygenic's trademark and trade dress claims.

█ Fabrication alleges that Hygenic as the manufacturer of the products at issue, violated Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. To prevail, it must show anti-competitive conduct and actual monopoly power or a dangerous probability that such power will be acquired. See *Real Estate Investors v. Columbia Pictures,* —— U.S.

——, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993); *United States v. Grinnell Corp,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966).

█ The burden is on a plaintiff to provide information creating a genuine issue of material fact with respect to these elements; Fabrication has failed to do so and consequently summary judgment dismissing its antitrust claims is appropriate.

*Absence of Anticompetitive Behavior*

Fabrication's efforts to show anticompetitive conduct on the part of Hygenic instead show merely "honestly industrial" rivalry which is encouraged under antitrust principles. *Berkey Photo, Inc. v. Eastman Kodak,* 603 F.2d 263 (2d Cir.1979), *cert. denied* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980). Hygenic's conduct as indicated by evidence submitted by Fabrication constitutes no more than robust competition, rather than efforts to create "[a]rtificial competitive advantages." *Emhart Corp. v. USM,* 527 F.2d 177, 182 (1st Cir.1975).

█ Fabrication asserts that Hygenic's trade dress infringement claims in this case and in other instances are anticompetitive. Use of lawsuits known to be without merit can violate the antitrust laws. *California Motor Transportation Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); see also *CVD v. Raytheon,* 769 F.2d 842 (1st Cir.1985); *L.G. Balfour v. FTC,* 442 F.2d 1, 17 (7th Cir.1971). No violation occurs, however, if the lawsuit has, or is reasonably believed to have, merit. *Professional Real Estate Investors v. Columbia Pictures,* —— U.S. ——, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Fabrication fails to adequately support such a claim. The fact that Hygenic's trade dress claims in this case have been dismissed does not establish that they were filed with anticompetitive intent or knowledge of lack of merit. Indeed, Hygenic did not initiate this suit, and filed its claims solely as compulsory counterclaims under Fed.R.Civ.P. 13.

Fabrication complains that Hygenic dropped Fabrication as a dealer for Hygenic's product because Hygenic began to sell

that product itself (Fabrication's Memorandum of Law, Dkt No. 48, March 21, 1994 [hereinafter "Memo"] at 40). Fabrication contends that Hygenic's products are essential facilities to rivals which Hygenic cannot decline to sell to Fabrication. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985); *MCI Communications v. AT & T*, 708 F.2d 1081 (7th Cir 1983), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983).

This is not a case in which one rival has a unique advantage such as a "bottleneck" transportation facility which anyone engaging in the industry must use, and which it denies to rivals. See *United States v. Reading Co.*, 226 U.S. 324, 33 S.Ct. 90, 57 L.Ed. 243 (1912); *United States v. Terminal R.R. Ass'n*, 224 U.S. 383, 32 S.Ct. 507, 56 L.Ed. 810 (1912); *Fishman v. Estate of Wirtz*, 807 F.2d 520, 536 (7th Cir.1986).

■ As a customer of Hygenic, Fabrication acts as a distributor, not a competitor. The antitrust laws permit but do not require manufacturers to utilize distributors; a dealer cutoff is not in itself anticompetitive. See *Business Electronics Corp. v. Sharp Electronics*, 485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988); J. Palamountain, *The Politics of Distribution* (1955).

Fabrication argues that Hygenic breached a contractual agreement permitting Hygenic to buy certain products for ten per cent (10%) less than any competitors (Memo at 43). This argument could be construed to give Fabrication improper advantage contrary to the Robinson–Patman Price Discrimination Act, 15 U.S.C. § 13(a). *See Texas Gulf Sulphur Col. v. J.R. Simplot Co.*, 418 F.2d 793, 805–06 (9th Cir 1969).

Fabrication also claims that Hygenic "did not give Fabrication reasonable notice to obtain an alternate source of supply," Memo at 19, thus conceding that such supplies are in fact available, but fails to indicate how long such notice would have to be to satisfy Fabrication.

Fabrication itself may well be in a position to contest Hygenic's market position by manufacturing itself or providing orders to competitors of Hygenic; its strength to do so is indicated by its 2,500 customers and 6,000 products (Memo at 16).

*Absence of Evidence of Monopoly Power or Risk of Its Creation*

■ Fabrication claims that Hygenic has 100% of the market for "color coded resistive exercise band and color coded complementary tubing products for use in the physical and occupational therapy market." Memo at 32. It has been recognized since *United States v. General Dynamics Corp.*, 415 U.S. 486, 94 S.Ct. 1186, 39 L.Ed.2d 530 (1974) that such statistics are only the starting point of analysis and are inapplicable if they do not reflect the true competitive situation. Where market share alone constitutes monopoly power, innovative niches filled by newcomers, or niches which can be effectively filled by only a small number of producers, could not be filled at all without antitrust risk. Consequently, such matters as ease of entry or availability of readily activated potential competition, cannot be ignored.

Fabrication has failed to show that such items are difficult to produce, so that a large number of other manufacturers of both health care and non-health care products create effective competition. See *United States v. Syufy Enterprises*, 903 F.2d 659, 664–65 (9th Cir.1990); *United States v. Baker Hughes, Inc.*, 908 F.2d 981 (7th Cir.1990).

No artificial barriers such as necessity to obtain licenses, exist. *See, Hospital Corp. of America v. FTC*, 807 F.2d 1381, 1387 (7th Cir.1986), *cert. denied* 481 U.S. 1038, 107 S.Ct. 1975, 95 L.Ed.2d 815 (1987). Further, hospitals and other large customers for products of the types involved here are clearly able to encourage potential rivals or even create one. See *Hospital Corp. of America*, 807 F.2d at 1391.

This litigation is presently before United States Magistrate Judge Mark D. Fox for supervision of discovery and all other pretrial matters including a report and recommendation concerning the viability of remaining claims, and for settlement efforts.

Accordingly, this Court declines at this time to make the finding contemplated by Rule 54(b) F.R.Civ.P.

SO ORDERED.