**FABRICATION ENTERPRISES, INC., Plaintiff–Appellee,**

v.

**The HYGENIC CORPORATION, Defendant–Appellant.**

No. 846, Docket 94–7745.

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1995.

Decided Aug. 22, 1995.

---

the product, and it can serve a utilitarian purpose. The law of trade dress protects the public against confusion as to the source of a product where the confusion arises from similarity of packaging or design. If trade dress protection of product design goes too far, however, the public may be deprived of the benefits of robust competition by precluding use of utilitarian product features. In consequence, the doctrine of functionality limits the extent of trade dress protection of product design. The issue on this appeal is whether the District Court correctly granted summary judgment determining that the design feature at issue here is functional and therefore not susceptible of trade dress protection.

Defendant The Hygenic Corporation ("Hygenic") manufactures latex exercise bands which are sold under the Thera–Band® trademark. The elasticity of the bands permits people to exercise by working against the bands' resistance to stretching. The product now consists of eight bands, ranging in levels of resistance from those that are easy to those that are more difficult to stretch. The multiple resistance levels permit a user to tailor exercises to his or her strength, much as would a set of dumbbells that has a range of weights. The bands are used primarily by physical therapists and athletic trainers to conduct exercise programs with patients that seek to increase the patients' strength over time by having them perform exercises with progressively more resistant bands. To help therapists and trainers differentiate among the bands' resistance levels, the bands are marketed in a series of colors—tan, yellow, red, green, blue, black, silver and gold—which signify, from least resistant to most resistant, the degree of resistance of the particular band. Five colors in the color sequence, those first used by Hygenic, are incorporated in registered trademarks for Thera–Band® products, which depict a series of horizontal bars in yellow, red, green, blue, and black framing the word "Thera–Band®."

Brendan J. O'Rourke, New York City (Michael T. Mervis, New York City, on the brief; Lauren S. Peterson, New York City, and Thomas W. Maroney, Tarrytown, NY, of counsel), for plaintiff-appellee.

Robert M. Gippin, Akron, OH (Patrick J. Keating and Adam M. Ekonomon, Akron, OH, and R. Mark Goodman, White Plains, NY, of counsel), for defendant-appellant.

Before VAN GRAAFEILAND, Senior Circuit Judge, WINTER, Circuit Judge, and KAPLAN, District Judge.*

KAPLAN, District Judge.

The design of a product may serve at least two purposes. It may identify the source of

* The Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

Plaintiff Fabrication . Enterprises, Inc. ("Fabrication"), a former distributor of Hygenic products, introduced a similar product, using the same color sequence, following the collapse of its relationship with Hygenic. It brought this action for, *inter alia,* a declaration that Hygenic did not have legally enforceable trade dress protection in the color system.

The District Court granted summary judgment in favor of Fabrication on the trade dress issue on the ground that the color sequence employed by Hygenic is functional and therefore not protectable. *Fabrication Enterprises, Inc. v. Hygenic Corp.,* 848 F.Supp. 1156 (S.D.N.Y.1994). The court below, however, did not have the benefit of *Qualitex Co. v. Jacobson Products Co.,* —— U.S. ——, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995). The Supreme Court there held that the doctrine of functionality does not preclude the use of color as a trademark and approved a functionality test in the color trade dress context highly sensitive to color's role in the competitive arena of the product. We conclude that there are genuine issues of material fact precluding summary judgment on the issue of functionality. We therefore reverse.

## I

Prior to 1977, Hygenic sold a latex sheeting product to dentists. The product was available in varying levels of resistance and was purchased by some physical therapists from dental suppliers. Physical therapists used the latex sheeting, in addition to other *ad hoc* implements such as inner tubes, to perform resistance exercises with their patients. When Hygenic in 1977 ceased sale of the product, two physical therapists approached Hygenic and described how they had been using the latex sheeting. The therapists suggested that Hygenic reinstate the product and market it to therapists as resistance exercise equipment in five different colors. They suggested a yellow-red-green-blue-black sequence to indicate progressive resistance levels. Although color systems had been used previously in other therapy products, no other product then used that particular sequence. The choice, moreover, was entirely arbitrary. The therapists' affidavits below explained that they thought of yellow and red as bright children's colors suited to the bands requiring the least strength, that green followed red as a Christmas color, that green and blue were more subdued and adult, and that they considered black heavier than the others. Hygenic initially rejected the suggestion, but adopted it in 1979 after exploring it with customers and receiving an enthusiastic reception.

Fabrication became a distributor of Thera–Band® in 1979, and this lawsuit is not the first manifestation of discord in the relationship with Hygenic. In 1987, Fabrication produced a similar resistive band product under the name "Can-Do" in colors identical to Hygenic's Thera–Band® product. Hygenic objected, and Fabrication instituted suit for a declaratory judgment determining that Hygenic had no rights in the colors. The case, however, was settled under an agreement (the "1987 Agreement") in which Hygenic contracted to reduce its prices to Fabrication, Fabrication promised to refrain from using the color format in exercise bands, and Fabrication acknowledged, for so long as Hygenic continued to sell to Fabrication pursuant to the Agreement, that "Hygenic has proprietary rights in the color format" used in the Thera–Band® products.

In August 1993, Hygenic gave notice to Fabrication terminating the 1987 Agreement. Fabrication thereupon brought this action, in which it asserted an antitrust claim in addition to seeking the declaratory relief already described. Hygenic counterclaimed for alleged violations of the Lanham Act and Section 368–d of the New York General Business Law and on unfair competition and common law grounds.

In October 1993, Fabrication obtained a preliminary injunction requiring Hygenic to continue supplying it with Thera–Band® products. Less than a month later, it displayed and solicited orders for its "Can-Do" product, which was made in colors identical and sold with packaging similar to Thera–Band®, at an Atlanta trade show. In December 1993, Hygenic moved for a preliminary injunction, but the motion was denied and no interlocutory appeal was taken.

In February 1994, Fabrication moved for summary judgment on its claim for declaratory relief and dismissing Hygenic's counterclaims, both on the ground that Hygenic's trade dress is functional. Hygenic objected to Fabrication's declarations for alleged failure to satisfy Fed.R.Civ.P. 56(e) and submitted extensive affidavits in opposition to the motion.

The District Court excluded Fabrication's declarations but nevertheless granted Fabrication's motion. It began from the premise that "[a] characteristic of a product is functional when important to the usefulness of the item." 848 F.Supp. at 1158. It noted that "[c]olors may be used solely to attract attention or to distinguish a brand from competing wares. When ... colors are used to identify or differentiate *characteristics* of the product as opposed to its *source or origin*, color has a functional use ..." and therefore is unprotectable. *Id.* at 1159. (Emphasis in the original) It then concluded:

> "It is undisputed that the colors of the resistant bands are intended to distinguish levels of resistance. This makes the color scheme functional. Numerous other means of making a given brand distinctive can be utilized. There is no necessity to strain to treat the color codes as nonfunctional in order to permit Hygenic to protect the integrity or identity of its own source products in the marketplace." *Id.*

Final judgment was entered on June 14, 1994,[1] and this appeal followed. Hygenic here attacks both the entry of summary judgment against it on the issue of functionality and the denial of its 1993 motion for a preliminary injunction.

## II

Our first task is to determine whether the District Court applied the correct legal standard in concluding that the Thera–Band® color code is functional and therefore not protectable trade dress.[2]

Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), prohibits a person from using a false designation of origin in commerce in connection with goods or containers for goods. A product's "trade dress," which involves the "total image of a product and may include features such as size, shape, color or color combinations, texture [or] graphics," *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985) *quoting John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir.1983), therefore may be protectable under the Lanham Act. Thus, a product's manufacturer may be entitled "to trade dress protection for the appearance of the product." *Stormy Clime Ltd. v. Pro-Group, Inc.*, 809 F.2d 971, 974 (2d Cir.1987).

The extent to which a product's trade dress is protectable is commensurate with the purpose of the Lanham Act, which is to secure "the public's interest in protection against deceit as to the sources of its purchases, [and] the businessman's right to enjoy business earned through investment in the good will and reputation attached to a trade name." *National Color Laboratories, Inc. v. Philip's Foto Co.*, 273 F.Supp. 1002, 1003 (S.D.N.Y.1967); 1 McCARTHY § 2.01[1], at 2–3. Thus, to earn protection under the Lanham Act, a manufacturer must show that its trade dress is capable of distinguishing the owner's goods from the competition's and identifying the source of the goods. Trade dress that can perform these tasks is said either to be inherently distinctive, because its intrinsic nature serves to identify the source of the product, or to have acquired secondary meaning by having become over time a distinguishing mark in the minds of consumers. *Two Pesos, Inc. v. Taco Cabana, Inc.*, — U.S. ——, 112 S.Ct. 2753, 120 L.Ed.2d 615

---

**1.** The District Court's order granted Hygenic's motion for summary judgment dismissing Fabrication's antitrust claims, which is not at issue on this appeal, but did not dispose of all of the claims asserted by both of the parties. It therefore was interlocutory at the time it was entered. The parties thereafter settled the remaining issues, and final judgment was entered.

**2.** We recognize that Hygenic counterclaimed on both trade dress and trademark grounds. This distinction is immaterial for most purposes on this appeal because functionality, the focus of the decision below and of this decision, is a defense in both trademark and trade dress cases. 1 J. THOMAS McCARTHY, McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 7.26[1] (3d ed. 1993) (hereinafter "McCARTHY").

(1992).[3] Even if a product's trade dress is distinctive, however, an alleged infringer can defeat Lanham Act protection by showing that the trade dress, or a feature of the trade dress, is functional. *Qualitex Co.,* —— U.S. at ——, 115 S.Ct. at 1304; *Stormy Clime,* 809 F.2d at 974; *LeSportsac,* 754 F.2d at 75. The purpose of the functionality defense is to prevent advances in functional design from being monopolized by the owner of the design's trade dress in order to "encourage competition and the broadest dissemination of useful design features." *Warner Bros., Inc. v. Gay Toys, Inc.,* 724 F.2d 327, 331 (2d Cir.1983).

■ On the motion below, the District Court concluded that the Thera–Band® color code is functional. It based this conclusion on the view that a color cannot be a protectable aspect of a product's trade dress if it is "important to the usefulness of the item," apparently irrespective of whether that color serves also to identify the source of the product. As the Supreme Court made clear in *Qualitex,* this is incorrect. The standard applied below does not take into account the fact that a color or color code, even one that contributes to the function of the product, may be protected under the Lanham Act unless the costs to competition of precluding competitors from using the color are too high. *Qualitex Co.,* —— U.S. at ——, 115 S.Ct. at 1306. Moreover, as we discuss below, the standard used by the District Court did not adequately account for the full variety of factors relevant to evaluating the possible impact on competition of granting Lanham Act protection to a product feature.

In *Qualitex,* the Supreme Court held that "where a color serves a significant nontrademark function ... courts will examine whether its use as a mark would permit one competitor (or a group) to interfere with legitimate (nontrademark-related) competition through actual or potential exclusive use of an important product ingredient." *Id.* at ——, 115 S.Ct. at 1306. Thus, a finding that

a color serves a useful non source-identifying function—which was the basis of the decision below—is in fact only the starting point for analysis of whether protecting the color as an aspect of trade dress would restrain competition unduly. The test endorsed by the Court in *Qualitex* for determining whether color is sufficiently functional to preclude trade dress protection is that originally articulated in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982): a feature or features of trade dress are not protectable if they are "essential to the use or purpose of the [product]" or "affect [the product's] cost or quality."

This Court has considered the *Inwood Laboratories* standard in the past. In *Stormy Clime,* we held that a court conducting a functionality inquiry must take account of two risks which, if badly managed, might result in either too great or too little protection of competition. On the one hand, to the extent that the product feature or design at issue enhances the distinctiveness of the product, there is a risk that failure to protect the feature or design will cause confusion and allow competitors to benefit unfairly from the original manufacturer's investment in its product's appearance. If such confusion occurs, meaningful competition is frustrated because "[w]ithout some ... method of product identification, informed consumer choice, and hence meaningful competition in quality, could not exist." *Smith v. Chanel, Inc.,* 402 F.2d 562, 566 (9th Cir.1968); *accord* 1 McCarthy § 3.02[2]. On the other hand, because a product feature or design that enhances the distinctiveness of the product also might contribute to the usefulness of the product, there is a risk that protecting the feature or design would give the manufacturer an unfair competitive advantage because competitors will be prohibited from incorporating that feature into their designs. *War-*

---

3. Pursuant to *Qualitex,* Lanham Act protection for a single color may be garnered only upon a showing of secondary meaning. *Qualitex Co.,* —— U.S. at ——, 115 S.Ct. at 1303. Whether this is true for the Thera–Band® color code, which consists of more than one color, is not an issue in this case because Hygenic does not contend that the Thera–Band® color code is inherently distinctive.

*ner Bros.,* 724 F.2d at 331; *Stormy Clime,* 809 F.2d at 976.[4]

■ In order properly to account for these risks, a court must examine a number of variables, including (1) the degree of functionality of the similar features of the product, (2) the degree of similarity between the non-functional (ornamental) features of the competing products, and (3) the feasibility of alternative designs that would not impair the utility of the product: "These factors should be considered along a continuum. On one end, unique arrangements of purely functional features constitute a functional design. On the other end, distinctive and arbitrary arrangements of predominantly ornamental features that do not hinder potential competitors from entering the same market with differently dressed versions of the product are non-functional and hence eligible for trade dress protection." *Stormy Clime,* 809 F.2d at 977 (citations omitted). The Supreme Court's emphasis in *Qualitex* on assessing how trade dress protection might affect competition when applying the functionality doctrine makes this multi-factored, industry-sensitive test even more vital, because only by examining all of these factors can a court accurately assess how the extension of Lanham Act protection to useful features may effect competition.

■ The District Court began and ended its analysis with determining whether the feature is important to the usefulness of the item. The approach does not appear to acknowledge the possibility that a useful product feature may serve both source-identifying and utilitarian ends and that the competitive

benefits of protecting the source-identifying aspects of the feature under the Lanham Act may outweigh the competitive costs of precluding competitors from using the feature. It therefore does not account for all of the variables that are relevant to assessing the potential competitive impact of extending Lanham Act protection to the product feature or design. We hold that this was error.

### III

■ Our conclusion that the District Court applied an incorrect legal standard does not end our analysis. A judgment appealed from will be sustained on any legally sufficient basis in the record. *International Ore and Fertilizer Corp. v. SGS Control, Serv., Inc.,* 38 F.3d 1279, 1286 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2276, 132 L.Ed.2d 280 (1995). Accordingly, we consider whether there was a genuine issue as to any fact material to determination of the issue of functionality.

The crux of Fabrication's motion for summary judgment was the contention that the color format used by Hygenic is an industry standard that has been used widely without objection by Hygenic. It argued that the use of a different color format to indicate the resistive strength of exercise bands would be unacceptable to the market and, indeed, dangerous and that no other method is technically or economically feasible.[5]

Fabrication submitted a good deal of evidence to the effect that several therapy products sold in progressive resistances are color

---

4. The Lanham Act is not concerned with protecting innovation by giving the innovator a monopoly, which is the function of patent law. Insuring that Lanham Act protection is not extended to product features that might grant a competitive advantage thus prevents the Lanham Act from interfering with the policies and purposes of patent law. *See Duraco Prods., Inc. v. Joy Plastic Enter., Ltd.,* 40 F.3d 1431 (3d Cir.1994); *Stormy Clime,* 809 F.2d at 978.

5. Fabrication submitted declarations or affidavits of its sole shareholder (Elliott Goldberg), three industry witnesses (Robert Silagy, John Vuckovich and Ronald Herzig), a physical therapist and a former Hygenic employee (George Sovak). Hygenic moved to strike those of Goldberg, Silagy, Sovak, and Vuckovich on the ground that

they contained inadmissible hearsay, failed to demonstrate the competency of the declarant or otherwise failed to satisfy Rule 56(e)'s requirement that affidavits in support of motions for summary judgment "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." In granting summary judgment for Fabrication, the District Court expressly declined to consider evidence from any of the challenged documents, although it did not in terms pass on the merits of Hygenic's objection. 848 F.Supp. at 1158 n. 1. Inasmuch as we conclude that the judgment should be reversed irrespective of whether Fabrication's materials are taken into account, we consider them as part of the summary judgment record.

coded and that a number use color formats identical or similar to that used by Hygenic. Sammons and others, for example, have sold hand putties coded by a yellow-red-green-blue sequence, Sammons since as early as 1979 or 1980. North Coast, Fabrication and Sammons have marketed exercise tubing in a yellow-red-green-blue-black sequence for some ten years, although Fabrication's tubing is made for it by Hygenic. One or more manufacturers have marketed hand and finger exercisers using the same sequence since 1989 or 1990. Apart from the Fabrication product that gave rise to Hygenic's counterclaim, however, the only evidence of other exercise bands comparable to the Thera-Band® product is one sold briefly and unsuccessfully by SPS, which was color coded in pastel shades of yellow-orange-green-blue.

Fabrication sought also to show that the use of color coding in general and of this color sequence in particular was indispensable or, at least, extremely important. The physical therapist who submitted evidence on its behalf expressed the opinion that use of a different color sequence would be potentially dangerous because patients and therapists accustomed to the allegedly standard sequence might mistakenly choose a band of an incorrect resistance level and thereby cause injury. The former principal of SPS, moreover, attributed the failure of its pastel colored exercise bands to the unwillingness of the market to accept anything but the Hygenic colors in the Hygenic sequence.

Finally, Fabrication contended that it was impossible, as a practical matter, to label its exercise bands. It argued that its product is manufactured by a process known as calendaring which leaves a talc film that cannot be printed or stamped on the bands.[6]

Hygenic's affidavits controverted Fabrication's evidence in virtually every respect. They asserted that hand putties, as well as hand and finger exercisers, are unrelated products that perform different functions than exercise bands and, in any case, that no one has sold hand putties in the same color sequence as Hygenic's exercise bands.[7] They averred that there is no industry standard, formal or informal, and pointed to a number of other progressive resistance products used in physical and occupational therapy that employ other color coding systems. They adduced evidence which, if credited, would establish that the use of the same color sequence by Fabrication for exercise bands could be dangerous to patients because the resistive properties of the Fabrication product are different than those of the Thera-Band® product. Perhaps most significantly, Hygenic submitted affidavits from the president of Akron Rubber Development Laboratory and a visual and marketing consultant which together asserted that different systems for signifying resistance levels on competitive products, both color based and other, were both technically and economically feasible, a position strengthened by affidavits of persons familiar with the market who expressed the view that such alternatives could be accepted in the marketplace.[8]

As we have noted, the Supreme Court recently reiterated—in a color trade dress case—that

> " 'a product feature is functional,' and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article,' that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co.,* —— U.S. at ——, 115 S.Ct. at 1304,

---

6. Fabrication acknowledged that Hygenic's product is manufactured by extrusion, which produces a material that can be printed or stamped. It argued, however, that extrusion equipment would cost $2 to $3 million, which is economically impractical if used solely for the production of exercise bands, which are a comparatively low volume product. It pointed out that Hygenic can justify such expensive equipment only because it manufactures other products on it and thus spreads the cost over a larger base.

7. Indeed, they disputed Fabrication's claim that Sammons sold hand putties in a yellow-red-green-blue sequence with an affidavit from Fred Sammons, the principal of the company, who stated that it used a three color sequence.

8. Hygenic's affidavits disputed also Fabrication's contention that the failure of SPS's pastel colored product demonstrated the commercial impracticality of a different color sequence. They contended that the SPS product had not been supported by an adequate marketing effort.

*quoting Inwood Laboratories,* 456 U.S. at 850 n. 10, 102 S.Ct. at 2187 n. 10 (1982). It went on to quote approvingly the Restatement's view that a design is functional if its aesthetic value lies in its ability to "confe[r] a significant benefit that cannot practically be duplicated by the use of alternative designs." *Id.* at —, 115 S.Ct. at 1306, *quoting* Restatement (Third) of Unfair Competition § 17, *Comment c,* at 175–76 (1995).

 In this case, it is undisputed that the color sequence employed by Hygenic confers a significant benefit in that it identifies the resistance level of each band. The dispositive issue is whether that benefit may be achieved by alternative means. That question must be viewed in terms of the technical and economic practicality of other color coding or identification systems—e.g., the practicality of imprinting or stamping the bands. It perhaps may be viewed also in terms of the acceptability of a different scheme of identification to the marketplace, although it is not clear that this is an appropriate consideration.[9] But however it is viewed, there are genuine issues of fact here. The parties' proofs are at loggerheads. In consequence, we cannot sustain the judgment in light of *Qualitex,* even if Fabrication's affidavits and declarations are considered.

## IV

We note the extensive effort devoted by the parties below to the issue whether others had used identical or similar color formats and, if so, whether they did so on comparable products and whether Hygenic objected to

such uses. Such evidence undoubtedly is relevant to the question whether Hygenic's trade dress is entitled to protection in the first place. As the Supreme Court held in *Two Pesos,* — U.S. at —, 112 S.Ct. at 2758, trade dress is entitled to protection if it is inherently distinctive or if it has acquired secondary meaning, i.e., if it has become distinctive of the goods of a particular source. But Fabrication did not seek summary judgment on the issue of protectability, and the District Court did not rule on the point. We think it inappropriate to do so in the first instance.

## V

██ Hygenic also seeks review of the District Court's denial in December 1993 of its motion for a preliminary injunction restraining Fabrication from marketing its "Can–Do" product in the same color sequence as Thera–Band®.

As we have noted, Hygenic sought a preliminary injunction after Fabrication introduced the "Can Do" product at a trade show. The motion, which was brought on by order to show cause, was made returnable at a status conference on December 17, 1993. No opposing papers were filed. Following the conference, the District Court endorsed an order denying the motion, apparently in anticipation of a prompt trial. No interlocutory appeal was taken.

The District Court made no findings of fact or conclusions of law in denying the motion, which alone requires a remand because it

---

9. Insofar as a new product's acceptability in the marketplace is affected by consumer goodwill toward a prior product, it appears that any costs that must be borne by the newcomer in overcoming that goodwill are not an appropriate part of the functionality inquiry, even though as a matter of economic reality it is obvious that such costs will affect the cost of the new item. As the Court indicated in *Qualitex,* the first comer is entitled to the advantages of reputation and recognition achieved through use of its trade dress in the market. *See Qualitex Co.,* — U.S. at —, 115 S.Ct. at 1306.

This is not to say, however, that the first manufacturer is entitled to all of the benefits that might accrue to the first person to introduce a product or product feature. Consumers over time may come to attribute meaning to a feature

other than as an indication of the product's source. If a sufficient proportion of consumers come to see the feature as signifying something other than the source of a product, then the feature may be declared generic and unprotectable. *See, e.g., Ciba–Geigy Corp. v. Bolar Pharmaceutical Co., Inc.,* 547 F.Supp. 1095, 1114 (D.N.J. 1982), *aff'd,* 719 F.2d 56 (3d Cir.1983), *cert. denied,* 465 U.S. 1080, 104 S.Ct. 1444, 79 L.Ed.2d 763 (1984); 2 McCarthy §§ 7.21[2], 7.21[3], 12. Thus, if a manufacturer wishes to retain Lanham Act protection for a product feature, it bears the burden of insuring that consumers view the feature in predominantly source-identifying terms. In this case, as we note above, the evidence on this question is conflicting.

leaves us unable to review the decision. *E.g., Fengler v. Numismatic Americana, Inc.,* 832 F.2d 745, 747 (2d Cir.1987); *FTC v. British Oxygen Co.,* 529 F.2d 196, 199–200 (3d Cir. 1976) (en banc); *See* Fed.R.Civ.P. 52(a), 65(d). On remand, however, we note that the District Court is entitled to consider the passage of time since the denial of the motion in December 1993. We have noted elsewhere that unwarranted delay in seeking a preliminary injunction in trademark cases undercuts the movant's claim of irreparable injury. *Majorica, S.A. v. R.H. Macy & Co.,* 762 F.2d 7, 8 (2d Cir.1985); *Citibank, N.A. v. Citytrust,* 756 F.2d 273 (2d Cir.1985). By parity of reasoning, the District Court may wish to consider whether Hygenic's failure to take an interlocutory appeal or to seek expedited handling of, or a stay pending, this appeal has a bearing on any contention that a preliminary injunction should be issued at this late date.

## VI

Accordingly, the judgment appealed from is reversed, the order denying Hygenic's motion for a preliminary injunction is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.