**PLASMART, INC., Plaintiff,**

v.

**WINCELL INTERNATIONAL INC., et al., Defendants.**

**No. 05 Civ. 10745(PKC).**

United States District Court, S.D. New York.

July 7, 2006.

Jeffrey Sonnabend, Sonnabendlaw, Brooklyn, NY, for plaintiff.

Matthew Terrence McLaughlin, Venable LLP (NYC), New York, NY, for defendants.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

Plaintiff PlaSmart Inc. brings this action against defendants Wincell International Inc., Jar Chen Wang, and Hong Jiun Gu, asserting five causes of action. Plaintiff seeks a declaratory judgment that its product, the PlasmaCar, does not infringe certain patents alleged to be held by defendants, and/or a declaration that those patents are invalid or unenforceable. Plaintiff also asserts causes of action for trade dress infringement, tortious interference with business relations and trade libel.

Defendants have answered and defendants Wincell and Wang have asserted counterclaims against plaintiff (and also named as a counterclaim defendant Timothy Kimber, plaintiff's president and founder) for patent infringement, trade dress infringement, and violation of New York's anti-dilution statute, New York Gen. Bus. Law § 360–1.

Plaintiffs have moved for a preliminary injunction: (1) enjoining defendants from asserting that plaintiff is infringing or has infringed "any patent of Defendants," (2) enjoining defendants from advertising or selling their "TwistCar" toy or any toy "substantially similar in overall visual impression to Plaintiff's PlasmaCar ride on toy," and (3) requiring defendants to recall

any of their TwistCar toys or other toys substantially similar to plaintiff's Plasma-Car that are currently in the possession of wholesalers or retailers.[1] The Court held a hearing on plaintiff's motion on July 6, 2006, at which hearing both plaintiff and defendants were afforded the opportunity to call witnesses or present additional evidence. Each side rested on its written submissions, supplemented by argument.

Based on the argument at the hearing and on the papers submitted in support of and in opposition to plaintiff's motion, the motion is denied.

*Preliminary Injunction Standard*

In order to obtain a preliminary injunction, the moving party must show that it will suffer irreparable injury in the absence of an injunction, and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits and a balance of hardships in its favor. *Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir.2004) (citation omitted). "[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990).

*Injunction Precluding Assertions of Patent Infringement*

■ Plaintiff asserts a cause of action for tortious interference with business re-lations, and, in connection with that claim, seeks to enjoin defendants from asserting that plaintiff's products infringe defendants' patents. A claim for tortious interference with business relations under New York law requires proof that (1) the plaintiff had a business relationship with a third party; (2) the defendant knew of and intentionally interfered with that relationship; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the interference in fact injured the relationship. *State St. Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 171 (2d Cir.2004) (citations omitted), *cert. denied*, 543 U.S. 1177, 125 S.Ct. 1309, 161 L.Ed.2d 161 (2005).[2]

■ However, "federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed.Cir.2004) (citation omitted); *see also Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1370 (Fed.Cir.2002) ("federal patent law bars the imposition of liability [under federal or state law] for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in

---

1. Defendants have marketed the single product at issue in this action under the name "SpaceRider," as well as "TwistCar." References to "TwistCar" in the remainder of this Memorandum and Order refer to the product whether sold under the name TwistCar or SpaceRider.

2. Plaintiff has also asserted a cause of action for trade libel, based on allegations that defendants have made false statements about the safety and quality of plaintiff's product. On the instant motion, however, plaintiff seeks to enjoin only assertions of patent infringement, and a cause of action for trade libel could not be based on such assertions. *See, e.g., Henneberry v. Sumitomo Corp. of Amer.*, 415 F.Supp.2d 423, 470 (S.D.N.Y. 2006) (under New York law, trade libel, also known as "injurious falsehood" or "product disparagement," requires a false statement "'denigrating the quality of the [plaintiff's] business' [sic] goods or services'") (quoting *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 670, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981)). Thus, the Court need not assess plaintiff's likelihood of success on its trade libel claim.

bad faith.") (internal quotation marks and citations omitted) (alteration in original). Moreover, "[t]he law recognizes a presumption that the assertion of a duly granted patent is made in good faith; this presumption is overcome only by affirmative evidence of bad faith." *C.R. Bard, Inc. v. M3 Sys., Inc.,* 157 F.3d 1340, 1369 (Fed.Cir.1998), *cert. denied,* 526 U.S. 1130, 119 S.Ct. 1804, 143 L.Ed.2d 1008 (1999).

■ Thus, where, as here, a plaintiff asserts claims under state tort law based on assertions of patent infringement, even if it is not generally a required element of the state cause of action, there can be no liability unless plaintiff clears the additional hurdle of proving bad faith. *See Globetrotter,* 362 F.3d at 1374 (citing *Zenith Elecs. Corp. v. Exzec, Inc.,* 182 F.3d 1340, 1355 (Fed.Cir.1999)). Threats of patent infringement suits cannot constitute "improper means" for purposes of a tortious interference claim under New York law unless made in bad faith. *B & G Plastics, Inc. v. Eastern Creative Indus.,* 269 F.Supp.2d 450, 468 (S.D.N.Y.2003).

■ Even if a defendant's contention that its patents are being infringed eventually proves inaccurate, statements asserting infringement are protected unless a plaintiff can provide "clear and convincing evidence that the infringement allegations are objectively false, and that the patentee made them in bad faith, *viz.,* with knowledge of their incorrectness or falsity, or disregard for either...." *Golan,* 310 F.3d at 1371. The burden rests with the plaintiff to prove bad faith. *Id.* at 1373 (citing *C.R. Bard,* 157 F.3d at 1369).

■ The Federal Circuit has made clear that, even if plaintiff can demonstrate subjective bad faith, liability cannot be imposed unless the assertions of patent infringement are not merely incorrect, but "objectively baseless." *Globetrotter,* 362 F.3d at 1375–77. In applying the "objectively baseless" standard to the assessment of state law tort claims premised on patent infringement contentions, the Federal Circuit expressly adopted the definition of "objectively baseless" set forth by the Supreme Court in *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (*"PRE"*). That is, the threat of an infringement suit " 'must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.' " *Globetrotter,* 362 F.3d at 1376 (quoting *PRE,* 508 U.S. at 60, 113 S.Ct. 1920).

■ Here, plaintiff has failed to demonstrate a likelihood of success on the merits, or even serious questions going to the merits, on its tortious interference claim. Plaintiff has failed to demonstrate that it is likely to overcome the presumption that any assertions of patent infringement were made in good faith, *see C.R. Bard,* 157 F.3d at 1369, rather than with knowledge that the relevant patents were invalid or not infringed, or with disregard for whether the infringement allegations were false. *See, e.g., Golan,* 310 F.3d at 1371–72 ("the evidence does not clearly show that Pingel knew the '921 patent was invalid at the time it asserted infringement or that Pingel had no reason to believe that Golan did not infringe any of Pingel's asserted patents"). Simply put, plaintiff has failed to come forth with any evidence whatsoever to indicate that any assertions of patent infringement were made in bad faith.

Even if the Court accepts that one of defendants' motives was to encourage plaintiff's customers to purchase defendants' products instead of plaintiff's, "a competitive commercial purpose is not of itself improper...." *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 897 (Fed.Cir.1998). Enjoining a patentee

from advising potential infringers of its patent rights would be inappropriate where, as here, "[t]he record provided shows no more than a negligible likelihood of success in showing bad faith...." *Id.* at 898; *see also Mallinckrodt, Inc. v. Medipart, Inc.,* 976 F.2d 700, 709–10 (Fed.Cir. 1992) (vacating injunction against infringement notices where no bad faith was alleged).

In light of the conclusion that plaintiff has not demonstrated that it is likely to overcome the presumption that Wincell's notice of patent rights and assertions of potential infringement are made in good faith, the Court need not engage in a detailed assessment of the likely merits of plaintiff's claim for a declaration of noninfringement or defendants' counterclaim for infringement of U.S. Patent No. 6,722,674 (the " '674 patent"), which would entail the resolution of disputed issues of claim construction on a record that is, at this stage, less than complete. Having reviewed the parties' respective papers, however, the Court is not persuaded that plaintiff is likely to succeed in demonstrating that defendants' contention that the PlasmaCar infringes the '674 patent is "objectively baseless," such that " 'an objective litigant could [not] conclude that the suit is reasonably calculated to elicit a favorable outcome.' " *Globetrotter,* 362 F.3d at 1376 (quoting *PRE,* 508 U.S. at 60, 113 S.Ct. 1920).

On this motion, plaintiff has placed before the Court only a single letter from defendant Wincell to one of its customers (Exhibit 1 to the complaint). The letter asserts infringement of four patents, and was transmitted to the customer prior to the commencement of any litigation between the parties. Specifically, the letter states that the PlasmaCar "has infringed both [defendants'] U.S. design patent and utility patents. The patents are: USD448430S, US6431566B1, US6722674B2 and US6860497B2." It further requests that, "[i]n order to avoid unnecessary patent litigation suit [sic] ... would you please told your buyers [sic] to cease the infringement behavior and ask your store buyer and .com buyers to talk with me?" Timothy Kimber, plaintiff's president, asserts that similar communications asserting infringement have been made to other customers. (Kimber Decl. ¶ 9)

Defendants have, in their Second Amended Counterclaim, asserted infringement of only one of the four patents mentioned in the letter -the '674 patent—and their papers on this motion are limited to discussion of that single patent. There is no evidence in the record on this motion that subsequent threats of infringement suits have been made by defendants to any of plaintiff's customers as to the other three patents. Plaintiff has failed to show that it is likely to overcome the presumption that the infringement assertions as to the four patents were made in good faith. On this application for a preliminary injunction, I need not address the hypothetical circumstance of a future threat letter premised upon the three patents defendants have chosen not to assert in their counterclaim. Plaintiff has failed to demonstrate that transmittal of such a letter is likely to recur.

Plaintiff's motion for an injunction barring defendants from making claims of patent infringement is denied.

*Injunction Precluding Sales of Defendants' Product*

With regard to plaintiff's trade dress claims, it has similarly failed to make a sufficient showing of likelihood of success on the merits, or serious questions going to the merits with the balance of hardships tipping decidedly in its favor.

The Lanham Act protects, under certain circumstances, a party's rights in its unregistered trade dress. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). The trade dress of a product has been defined as "essentially its total image and overall appearance." *Id.* at 764 n. 1, 112 S.Ct. 2753 (citation and internal quotation marks omitted). In order to make out a claim for trade dress infringement under the Lanham Act, "a plaintiff must prove (1) that its trade dress is distinctive of the source and (2) that a likelihood of confusion exists between its product and defendant's product." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1006–07 (2d Cir. 1995) (citation omitted).

Though in some cases, trade dress, like a trademark, may be found to be inherently distinctive, the Supreme Court has held that where, as here, the trade dress claimed to have been infringed consists of the product's design itself, rather than its packaging, such design "is distinctive, and therefore protectible, only upon a showing of secondary meaning." *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). Secondary meaning is achieved when, " 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.' " *Id.* at 211, 120 S.Ct. 1339 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)) (alteration in original). The *Wal–Mart* court so held because, "[i]n the case of product design ... consumer predisposition to equate the feature with the source does not exist." *Id.* at 213, 120 S.Ct. 1339; *see also Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1001 (2d Cir.1997) ("over-inclusive protection of the product design risks conferring benefits beyond the intended scope of the Lanham Act and entering what is properly the realm of patent law") (citation omitted); *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir.1997) ("granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves").

In assessing whether a trademark, or, in this case, trade dress, has acquired secondary meaning, courts consider factors such as "advertising expenditures, consumer studies, sales success, unsolicited media coverage, attempts to plagiarize and length and exclusivity of use." *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir.1992) (citation omitted). To prove secondary meaning, a plaintiff must meet "vigorous evidentiary requirements." *Id.* (citation and internal quotation marks omitted).

Plaintiff has not established that it is likely to succeed in proving that the design of the PlasmaCar has acquired secondary meaning such that consumers associate the design with a single manufacturer. The only evidence in the record pertaining to the alleged secondary meaning is contained within the declaration of Timothy Kimber, president and founder of PlaSmart. As regards advertising expenditures, Kimber asserts that plaintiff has "expended significant resources" promoting the PlasmaCar, including over $100,000 in "product promotion and P.R. expenditures." (Kimber Decl. ¶ 5) Kimber includes a list of publications in which ads for the PlasmaCar have appeared. (*Id.*) Plaintiff has introduced no consumer studies, though Kimber does state that he believes that consumers associate the trade dress at issue here—described as a "twisted figure eight" shape—with PlaSmart. (*Id.* ¶ 8) Kimber also states that plaintiff has sold approximately 50,000 PlasmaCars

in the U.S. since its introduction in February 2005. (*Id.* ¶ 4) Kimber points out that the PlasmaCar has won or been nominated for several awards, including two 2006 nominations for Toy Industry Association Toy of the Year awards, "the Toy Industry's version of the Oscars." (*Id.* ¶ 6) Plaintiff cites no "attempts to plagiarize" the trade dress of the PlasmaCar. Plaintiff has been using the trade dress in the U.S. market for approximately a year and a half, but, as discussed in greater detail below, its use was never exclusive. The information in the Kimber declaration does not persuade the Court that plaintiff will be able to meet the "vigorous evidentiary requirements" of proving secondary meaning. *See Bristol–Myers Squibb*, 973 F.2d at 1041.

Even if plaintiff could arguably establish that the "twisted figure eight" shape in which it claims protectable trade dress rights has come to be indicative of the source of the product, it cannot show a likelihood of success on the merits. In order to succeed on a claim of infringement based on secondary meaning, a plaintiff must show that "the mark had acquired secondary meaning *before* its competitor commenced use of the mark." *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 564 (2d Cir.1990) (emphasis added) (citations omitted); *see also Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1043 (2d Cir.1980) ("Even if Saratoga Vichy has rights in the name 'Saratoga' because its use of the name has acquired a secondary meaning, it could not prevent the use of that term by one whose use had begun before the secondary meaning was acquired.") (citations omitted); *Star Indus., Inc. v. Bacardi & Co.*, 2003 WL 23109750 at *5 (S.D.N.Y. Dec.31, 2003) (citing *PaperCutter*, 900 F.2d at 564), *aff'd*, 412 F.3d 373 (2d Cir.2005), *cert. denied*, ─── U.S. ───, 126 S.Ct. 1570, 164 L.Ed.2d 298 (2006).

This is consistent with the purpose of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which "grants to the *first* manufacturer of a product, in certain circumstances, an unregistered trademark in the trade dress of the product." *Naso v. Park*, 850 F.Supp. 264, 269 (S.D.N.Y.1994) (emphasis added) (citation omitted). It is axiomatic that, "the exclusive right to the use of the mark or device claimed as a trade-mark is founded on priority of appropriation; that is to say, the claimant of the trade-mark must have been the first to use or employ the same on like articles of production." *Columbia Mill Co. v. Alcorn*, 150 U.S. 460, 463–64, 14 S.Ct. 151, 37 L.Ed. 1144 (1893); *see also Fabrication Enters., Inc. v. Hygenic Corp.*, 64 F.3d 53, 61 n. 9 (2d Cir.1995) ("the first comer is entitled to the advantages of reputation and recognition achieved through use of its trade dress in the market") (citation omitted). Thus, in trade dress infringement cases, generally, "[t]he inquiry is whether the trade dress of a 'junior user'—one who has adopted its mark or dress later than the 'senior user'—is likely to cause consumer confusion as to the source of the product." *Bristol–Myers*, 973 F.2d at 1042.

It is undisputed that plaintiff did not sell its product in the United States until February 2005. It is also undisputed that Wincell first sold its product—incorporating the allegedly infringing product design—in the United States no later than January 2001, over four years prior to plaintiff's first sale. The Court must, then, conclude that plaintiff is exceedingly unlikely to succeed in proving that the shape of its product had acquired secondary meaning prior to Wincell's adoption of the design. *See Talk To Me Prods., Inc. v. Larami Corp.*, 804 F.Supp. 555, 563–64 (S.D.N.Y.1992) ("[Plaintiff] would have to

show that it acquired secondary meaning prior to [defendant's] first shipment of water guns on August 24, 1990. Since the only sale it made prior to August 24, 1990 was the single sale of a water gun on May 15, 1990, such a showing is inconceivable."), *aff'd*, 992 F.2d 469 (2d Cir.1993); *PaperCutter*, 900 F.2d at 564 ("That plaintiff's product was liked, there can be no doubt; that consumers came to associate plaintiff's product with its mark ... before [defendant] adopted use of the mark, however, seems very doubtful indeed.").

Plaintiff appears to claim that defendants abandoned any rights to the trade dress associated with the TwistCar at some point between its introduction in 2001 and the first sale of the PlasmaCar in February 2005. To prove abandonment, a party must show that use of the trademark or trade dress has been discontinued, and that the senior user of the mark or dress has no intent to resume use in the United States in the "reasonably foreseeable future." *ITC Ltd. v. Punchgini, Inc.*, 373 F.Supp.2d 275, 279 (S.D.N.Y.2005) (quoting *Silverman v. CBS Inc.*, 870 F.2d 40, 46 (2d Cir.), *cert. denied*, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989)) (additional citations omitted). Here, there is simply no evidence that defendants ever discontinued the use of the trade dress plaintiff contends is common to the Twist-Car and the PlasmaCar. Defendants submitted to the Court many invoices reflecting sales of their product beginning in 2001, continuing up to May of this year. The Court finds that the TwistCar has been continuously distributed by defendants in the United States, and the trade dress was not abandoned at any point. *Cf. Saratoga Vichy Spring*, 625 F.2d at 1043–44 (mark not abandoned even though unused for seven years where no intent to abandon).

Plaintiff has not demonstrated any likelihood of success on the merits, or serious questions going to the merits, of its trade dress claim. *See, e.g., Fraga v. Smithaven MRI*, 866 F.Supp. 107, 112 (E.D.N.Y.1994). Moreover, because defendant Wincell is the senior user of the trade dress in question, and has been selling its products in the U.S. for over five years, the balance of hardships weighs substantially in its favor, as the requested injunction would preclude it from distributing its product pending the resolution of this litigation. *See, e.g., Calvin Klein Co. v. Farah Mfg. Co.*, 1985 WL 3953, 229 U.S.P.Q. 795, 801 (S.D.N.Y. Nov.26, 1985); *cf.* 5 McCarthy on Trademarks and Unfair Competition § 30.50 (2006) ("In a trademark case, the status quo ante litem to be preserved by a preliminary injunction is the situation prior to the time the junior user began use of its contested mark: the last peaceable non-contested status.") (footnote omitted). Thus, plaintiff's motion for an injunction prohibiting defendants from advertising or selling their products and requiring them to recall any products currently in the possession of wholesalers or retailers must be denied.

*Conclusion*

For the reasons set forth above, plaintiff's motion for a preliminary injunction is DENIED in its entirety.

SO ORDERED.